SPRIK v REGENTS OF THE UNIVERSITY OF MICHIGAN

LANDLORD AND TENANT—RENT.

    Lease of an apartment by the Regents of the University of
    Michigan gives the tenants no right of inquiry into the use of
    rental payments where the lease provided that the landlord
    reserved the right to revise rental rates upward or downward
    during the term of the lease and that a 60 day notice of a rent
    increase would be given the lessee prior to implementation, and
    contained no provision limiting the purpose or purposes for
    which the landlord may increase the rent; the fact that the
    landlord has seen fit to explain the reason for its rent increase
    to the tenants does not constitute an admission that a valid or
    acceptable reason must exist to justify the rent increase; such
    explanation is entirely gratuitous and neither adds to nor
    detracts from the legal posture of the parties to the lease
    contract.

Appeal from Court of Appeals, Division 2, Levin,
P. J., and Holbrook and Bronson, JJ., affirming
Court of Claims, Norman A. Baguley, J. Submitted
June 6, 1973. (No. 6 June Term 1973, Docket No.
54,432.) Decided September 18, 1973.

43 Mich App 178 affirmed

Complaint by Dale R. Sprik and others, as repre-
sentatives of a class, against the Regents of the
University of Michigan for an injunction to re-
strain defendant from paying certain funds to the
Ann Arbor School District, from collecting a
monthly school assessment from plaintiffs, and for
refund of sums collected. Summary judgment for

REFERENCE FOR POINTS IN HEADNOTE
49 Am Jur 2d, Landlord and Tenant §§ 518–527.

defendant. Plaintiffs appealed. Affirmed. Plaintiffs appeal. Affirmed.

*Douvan, Harrington & Carpenter,* for plaintiffs.

*Roderick K. Daane,* for defendant.

Amicus Curiae: *DeVine & DeVine* (by *Allyn D. Kantor),* for Public Schools of the City of Ann Arbor.

T. E. BRENNAN, J. Plaintiffs are residents of apartment facilities owned and operated by defendant, Regents of the University of Michigan.

On March 1, 1971, plaintiffs instituted this class action on behalf of themselves and others similarily situated, seeking an injunction against the defendant restraining it from collecting certain money from the plaintiffs and requiring the refund of such funds already collected.

The facts are not in dispute. In the Court of Claims where this action was originally heard, both defendant and plaintiffs sought summary judgment, each claiming that the pleaded and conceded facts entitled them to judgment.

The background of this controversy is well stated in a letter from the general counsel for the defendant to the Attorney General.

The letter was attached to plaintiffs' complaint as an exhibit.

"For a number of years the University of Michigan, as a part of its educational system, has operated a primary and secondary school, which provided education for a number of residents of the City of Ann Arbor who would otherwise have attended the public schools. Several years ago the Board of Regents discontinued University High School and, at the same time, conveyed approximately 25 acres of land adjacent to the North

Campus of the University of Michigan as a part of the
site of Huron High School, which was constructed by
the Public Schools of the City of Ann Arbor to meet the
increasing enrollment. By action of the Board of Re-
gents, the junior high school was discontinued in June
of 1969, and the University Elementary School will be
discontinued in June of 1970.

"The University in the performance of its educational
functions provides housing for both unmarried and
married students of the University of Michigan. At the
present time it has approximately 1300 family units for
the housing of married students on the North Campus
of the University of Michigan, and there are 386 chil-
dren of married students of the University of Michigan
residing in the tax-exempt facilities of the University
who attend the public schools of the City of Ann Arbor.
The education of these children places a burden on the
Public Schools of the City of Ann Arbor for which it
receives no compensation in the way of direct or indi-
rect taxation of the parents of the said children.

"The Public Schools of the City of Ann Arbor has *[sic]*
demanded that the University provide equitable com-
pensation for the education furnished to children of
students living in tax-exempt facilities either by a
payment in lieu of taxation or by a payment for ser-
vices rendered comparable to the contracts authorized
by Mich. Stat. Ann. 4.191.

"The representatives of the Public Schools and of the
Regents have tentatively agreed that the University
should pay to the Public Schools of the City of Ann
Arbor the sum of $252,000.00 for educational facilities
furnished to the 386 children residing in the tax-exempt
housing of the University of Michigan for the school
year 1970–71. This amount roughly approximates the
amount that would be paid for school taxes if the
married student housing facilities on the North Campus
of the University of Michigan were on the tax roll.

"The Board of Regents has given conditional approval
to this tentative agreement provided that a portion of
the payment is obtained from an increase in rental of
the housing facilities and provided, further, that no
payment shall be made to the Public Schools of the City

of Ann Arbor until an opinion is obtained from the Attorney General of the State of Michigan or a court as to the legality of such payment."

A second exhibit attached to plaintiffs' complaint is a notice to residents of University Apartment Facilities, including the present plaintiffs:

"As many of you are aware a rental increase for University Apartment Facilities was authorized at the May 15, 1970 meeting of the Board of Regents of the University. The new rents effective August 1, 1970 cover not only increases in costs of operations anticipated for next year but also include a sum of $6 per apartment per month as partial payment for school services available to children of University Family Housing residents.

"The Regents have stipulated that the rental increase attributable to school services will be collected as part of the rent effective August 1, 1970 but no payment will be made until an opinion is obtained from the Attorney General of the State of Michigan or a court of competent jurisdiction as to the legality of such payments for school services.

"Effective August 1, 1970 the following payments are due for your appropriate unit. These rental increases are being made in accord with the terms of your apartment lease agreement.

"Rates for University Terrace and Northwood I, II, & III

| "Efficiency Units— | | | $106 |
| "One-bedroom—Northwood II Sub-dwellings— | | | 116 |
| "One-bedroom—Other Units— | | | 121 |
| "Two-bedroom Units— | | | 136 |

"Rates for Northwood IV

|  | Unfurnished | Furnished | Utilities |
| --- | --- | --- | --- |
| "One-bedroom | $116 | $126 | $22 |
| "Two-bedroom | 131 | 133 | 24 |
| "Three-bedroom | 146 | 160 | 26" |

On April 13, 1971, the Court of Claims granted

defendant's motion for summary judgment and denied plaintiffs' motion for summary judgment.

Plaintiffs appealed, and the Court of Appeals affirmed the Court of Claims.

The thrust of the plaintiffs' argument is that the $6 monthly increase in rent for University-owned apartments is an illegal exaction, in the nature of a tax, imposed to support an illegal payment from the University to the Ann Arbor School District.

For reasons that will hereafter appear, we do not consider the legality of the proposed payment by the University to the Ann Arbor schools.

As presented here, the case is purely a question of contract law. The relationship of these plaintiffs and the defendant is one of landlord and tenant. The rights and duties of the parties are to be determined by settled principles in that field.

Attached to defendant's answer is a copy of the lease agreement entered into between all apartment residents and the University.

"The Regents of The University of Michigan, Lessor, (hereinafter referred to as the University) hereby leases to SPRIK, Dale R. Lessee, (a married man or woman legally enrolled as a full-time student of The University of Michigan, or appointed as a member of the staff thereof) to be occupied by Lessee (his wife) and family, and by no other person, Apartment Number xxx 1964 together with the furnishings and equipment thereof located at McIntyre, Northwood IV, 3 Br. (Unfurnished) Ann Arbor, Michigan, *for the period beginning the 1st day of July, 1969, and continuing until terminated by either party as hereinafter provided.*

"The Lessee covenants and agrees to pay rent to the University

$135.00

21.00 utilities

at the rate of $156.00 per month, payable in advance on the first day of each month to the University of Michi-

gan (at the Cashier's Office, 1015 L. S. & A. Building or North Campus Commons), *or a revised rate determined in accordance with the following terms and conditions, which are incorporated herein and made part of this agreement.*

\* \* \*

### "PERIOD OF OCCUPANCY

"The Lessee may continue in residence as long as the conditions of occupancy are satisfied. The period begins on the date indicated above. The lease continues in effect until conditions of occupancy are no longer met or a sixty-day written notice is submitted to the University Apartments' Office by the resident.

### "TERMINATION OF OCCUPANCY

"A *sixty-day written notice of termination of the lease is required.* Residents who complete their academic work or who withdraw voluntarily will be held responsible for rent for a sixty-day period from the date of notification or from the date of the Apartments' Office is aware of departure if notification is not given.

"The sixty-day termination clause will be waived in the case of military draftees, enlistees, and reservists who are notified that they are to be called or recalled to military duty. The Office of University Housing should be informed immediately upon the tenant's notification of this eventuality.

\* \* \*

"*If the tenant falls two months in arrears in the rent* payment, the University *reserves the right to terminate.* Such termination shall be without prejudice to the right of recovering damages against the defaulting party.

"*The University reserves the right to revise rental rates upward or downward during the term of this lease. In the event of a rent adjustment, the Lessee will be given a sixty-day notice of the increase prior to implementation.*"

The lease contains no provision limiting the purpose or purposes for which the University may increase the rent.

The term of the lease is not designated in months or years. It is to continue until terminated by either party as provided in the lease. The tenant is entitled to terminate upon 60 days notice. No reason need be given for such termination.

By reserving the right to increase the rent upon 60 days notice, the University has, for all practical purposes, retained the same right of termination for itself. No reason need be given for increasing the rent, and no limitation upon the amount of such increase is provided.

Even if the University's proposed payment to the Ann Arbor schools were illegal—which we do not here decide—the savings would not inure to the benefit of these plaintiffs. The lease contract gives the tenants no right of inquiry into the use of rental payments.

Nor does the fact that the University has seen fit to explain the reason for its rent increase to the tenants constitute an admission that a valid or acceptable reason must exist to justify the rent increase. Such explanation is entirely *gratuitous* and neither adds to nor detracts from the legal posture of the parties to the lease contract.

Affirmed with costs to the appellee.

SWAINSON and M. S. COLEMAN, JJ., concurred with T. E. BRENNAN, J.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH and WILLIAMS, JJ., concurred in the result.

LEVIN, J., did not sit in this case.