DADY v ROCHESTER SCHOOL BOARD

Docket No. 78-3168. Submitted April 10, 1979, at Detroit.—Decided May 22, 1979.

Staci Dady, a student in the Pontiac school system, required catheterization at four-hour intervals in order to stay in school. Janice E. Dady, as next friend of Staci Dady, filed a complaint against the School Board for the City of Rochester, the Pontiac School Board, its director of special education and a special education instructor alleging that if the Pontiac schools, in providing special education service pursuant to a contract with the Rochester Community Schools, did not provide for the periodic catheterization of Staci by providing a nurse to perform these services, Staci would suffer discrimination because of her use of adaptive devices or aids and would lose her right to an education which the plaintiff contends is insured to her under the Michigan Handicappers' Civil Rights Act (HCRA). The school undertook this treatment for several months and then ceased to do so. Staci's mother then came to the school to perform the service until the term was completed. Defendants contend that the statute imposes no affirmative duty to assist Staci in coping with her special needs and, while other statutes may provide such relief to plaintiff, the handicappers' statute does not. Oakland Circuit Court, Frederick C. Ziem, J., granted defendants' motion for summary judgment. Plaintiffs appeal. The question on appeal is whether HCRA requires the special education program of a public school district to render medical services to a handicapped child when such care is a condition of the child's ability to attend the program. *Held:*

The Michigan Handicappers' Civil Rights Act does not require a special education program to administer periodic catheterization during school hours to a child who requires such

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 68 Am Jur 2d, Schools § 5.
[3, 5, 8, 10] 68 Am Jur 2d, Schools §§ 5, 215, 219.
[4] [No Reference].
[6, 7] 68 Am Jur 2d, Schools §§ 275, 276.
[8] 15 Am Jur 2d, Civil Rights § 61.
[9] [No Reference].

treatment as a condition to attending school; the act applies when a person's handicap is unrelated to his ability to utilize and benefit from an educational institution or its services. If the person is unable to utilize a school program because of his handicap, the Michigan Handicappers' Civil Rights Act does not apply.

Affirmed.

1. SCHOOLS AND SCHOOL DISTRICTS — PUBLIC EDUCATION — HANDICAPPED CHILDREN.

A state that has undertaken to provide public education is required to make it available to all, including handicapped children, on equal terms.

2. SCHOOLS AND SCHOOL DISTRICTS — PUBLIC EDUCATION — HANDICAPPED CHILDREN — DISCRIMINATION — CIVIL RIGHTS — STATUTES.

The opportunity to obtain full and equal utilization of public educational facilities without discrimination because of a handicap is guaranteed and is a civil right (MCL 37.1102; MSA 3.550[102]).

3. SCHOOLS AND SCHOOL DISTRICTS — EDUCATIONAL INSTITUTIONS — HANDICAPPED PERSONS — DISCRIMINATION — STATUTES.

Educational institutions are prohibited from discrimination in any manner against an individual in the full utilization of or benefit from these institutions and shall not exclude, expel, limit or otherwise discriminate against an individual seeking admission as a student or an enrolled student because of a handicap that is unrelated to the individual's ability to utilize and benefit from the institution or its services, or because of the use by an individual of adaptive devices or aids (MCL 37.1402; MSA 3.550[402]).

4. SCHOOLS AND SCHOOL DISTRICTS — EDUCATIONAL INSTITUTIONS — HANDICAPPED PERSONS — DEFINITIONS — STATUTES.

A handicap is defined by the Handicappers' Civil Rights Act as a determinable physical or mental characteristic of an individual or the history of the characteristic which may result from disease, injury, congenital conditions of birth, or functional disorder, which characteristic is unrelated to the individual's ability to utilize and benefit from educational opportunities, programs and facilities at an educational institution (MCL 37.1103; MSA 3.550[103]).

5. CONSTITUTIONAL LAW — EDUCATION — HANDICAPPED PERSONS.

Education of the handicapped should always be fostered and supported (Const 1963, art 8, § 8).

6. SCHOOLS AND SCHOOL DISTRICTS — TEACHERS AND ADMINISTRATORS — STUDENTS — ADMINISTRATION OF MEDICATION — LIABILITY — GROSS NEGLIGENCE — WILFUL MISCONDUCT — STATUTES.

A school administrator or teacher who administers medication to a student must do it in the presence of another adult pursuant to written permission of the student's parents or guardian and in compliance with the instructions of a physician; this statutory procedure, where followed properly, protects the teacher or administrator from liability except in cases of gross negligence or wilful and wanton misconduct (MCL 380.1178; MSA 15.41178).

7. SCHOOLS AND SCHOOL DISTRICTS — PUBLIC EDUCATION — HANDICAPPED CHILDREN — MEDICAL TREATMENT — SCHOOL'S RESPONSIBILITY — STATUTES.

The Michigan Handicappers' Civil Rights Act does not require a special education program to administer periodic catheterization during school hours to a child who requires such treatment as a condition to attending school (MCL 37.1101 *et seq.;* MSA 3.550[101] *et seq.).*

8. SCHOOLS AND SCHOOL DISTRICTS — CIVIL RIGHTS ACT — HANDICAPPERS' RIGHTS DISCRIMINATION — LEGISLATIVE INTENT — STATUTES.

The Legislature in enacting the Michigan Civil Rights Act and its companion act, the Michigan Handicappers' Civil Rights Act, intended to give handicappers a general civil right to nondiscrimination in education; it did not impose greater duties of nondiscrimination with regard to the handicapped than it did with regard to religion, race, color, national origin or sex (MCL 37.1402, 37.2402; MSA 3.550[402], 3.548[402]).

9. STATUTES — HANDICAPPED PERSONS — RIGHT TO WORK — RIGHT TO PUBLIC PLACES.

The Michigan Handicappers' Civil Rights Act is aimed at eradicating the old assumptions that handicappers cannot work or should be kept out of public places (MCL 37.1101 *et seq.;* MSA 3.550[101] *et seq.).*

10. SCHOOLS AND SCHOOL DISTRICTS — HANDICAPPED PERSONS — RIGHT TO EDUCATION — INABILITY TO ATTEND — STATUTES.

The Michigan Handicappers' Civil Rights Act applies when a person's handicap is unrelated to his ability to utilize and benefit from an educational institution or its services; if the person is unable to utilize the school because of his handicap,

the handicappers' act does not apply (MCL 37.1101 *et seq.;* MSA 3.550[101] *et seq.*).

*Roy, Cardamone, Watson & Hewson,* for plaintiff.

*Dudley, Patterson, Maxwell, Smith & Kelly,* for defendants Pontiac School Board, William White and Marlene Calderwood.

*Thrun, Maatsch & Nordberg* (by *Harry J. Zeliff),* for City of Rochester School Board.

Before: BEASLEY, P.J., and ALLEN and D. C. RILEY, JJ.

BEASLEY, P.J. The question we are asked to decide is whether the Michigan Handicappers' Civil Rights Act[1] (HCRA) requires the special education program of a public school district to render "medical" services to a handicapped child when such care is a condition of the child's ability to attend the program.

The trial court decided in the negative, and defendants' motion for summary judgment was granted pursuant to GCR 1963, 117.2(1).

Challenges by the handicapped to their exclusion from public education are recognized in the proposition set forth in *Brown v Board of Education:* [2]

"* * * [education] is a principal instrument in awakening the child to cultural values, in preparing him for later * * * training, and in helping him to adjust normally to his environment. In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education. * * * [W]here the state has undertaken to

[1] MCL 37.1101 *et seq.;* MSA 3.550(101) *et seq.*

[2] 347 US 483, 493; 74 S Ct 686; 98 L Ed 873 (1954).

provide it [education], [it] is a right which must be made available *to all on equal terms.*"[3] (Emphasis added; footnote omitted.)

Plaintiff contends that if Pontiac schools, in providing special education services pursuant to a contract with Rochester Community Schools, does not provide for the periodic catheterization of Staci Dady, she will lose her right to an education, a right which plaintiff contends is insured to her under the HCRA. The act states, in pertinent part:

"Sec. 102. The opportunity to obtain employment, housing and other real estate and full and equal utilization of public accommodations, public services, and educational facilities without discrimination because of a handicap is guaranteed by this act and is a civil right."

"Sec. 402. An educational institution shall not:

"(a) Discriminate in any manner in the full utilization of or benefit from the institution, or the services provided and rendered thereby to an individual because of a handicap that is unrelated to the individual's ability to utilize and benefit from the institution or its services, or because of the use by an individual of adaptive devices or aids.

"(b) Exclude, expel, limit, or otherwise discriminate against an individual seeking admission as a student or an individual enrolled as a student in the terms, conditions, and privileges of the institution, because of a handicap that is unrelated to the individual's ability to utilize and benefit from the institution, or because of the use by an individual of adaptive devices or aids."

"Sec. 103. As used in this act:

* * *

"(b) 'Handicap' means a determinable physical or mental characteristic of an individual or the history of the characteristic which may result from disease, in-

---

[3] See, Haggerty and Sacks, *Education of the Handicapped: Towards a Definition of an Appropriate Education,* 50 Temple L Quar 941, 963 (1977), for a discussion relating *Brown, supra,* to the equal educational opportunities of the handicapped.

jury, congenital condition of birth, or functional disorder which characteristic:

\* \* \*

"(iii) for purposes of article 4, is unrelated to the individual's ability to utilize and benefit from educational opportunities, programs, and facilities at an educational institution."

"Sec. 401. As used in this article, 'educational institution' means a public or private institution and includes an academy, college, elementary or secondary school, extension course, kindergarten, nursery, school system, school district, or university, and a business, nursing, professional, secretarial, technical, or vocational school; and includes an agent of an educational institution."

The claim alleges discrimination by the school district in not providing for a nurse to perform these services and states that Staci has suffered "discriminat[ion] \* \* \* because of [a requirement for] the use by [the plaintiff] of adaptive devices or aids". The school undertook the catheterization for several months and then ceased to do so. Staci's mother then came to the school to perform the service until the term was completed. Failure to provide this medical procedure at four-hour intervals could result in serious medical problems for Staci.

Defendants respond that plaintiff's request for an injunction under the statute to refrain from discrimination against handicapped persons generally imposes no affirmative duty to assist plaintiff in coping with her special needs. Defendants claim that other statutes may provide such relief to plaintiff, but that the HCRA does not.

The trial court, in rendering its decision, stated:

"\* \* \* the Plaintiff has failed to state a cause of action upon which this Court can grant relief, because the Michigan Handicappers Civil Rights Act neither

requires nor authorizes the Defendants to assume Plaintiff's parents' responsibility to provide such medical procedures for their child as they deem appropriate.

"Both the Federal and the State legislative bodies have mandated that certain affirmative action be taken by educational institutions, as well as other entities, to alleviate the difficulties by which handicapped individuals may function in our society.

"In the legislation, which is referred to in the Briefs, they have not seen fit to mandate that catheterization be provided.

"The Michigan Handicappers Civil Rights Act was obviously designed to do exactly what it says it is designed to do, to wit: prohibit denial of educational programs on the basis of the existence of a handicap.

"Other legislation is designed to establish affirmative programs in this regard."

This decision appears to be based on three grounds:

(1) If plaintiff's interpretation were to prevail, the effect would be to direct places of public accommodation to provide affirmative acts such as plaintiff contends she is entitled to.

(2) If the Legislature's intention was to establish "additional affirmative programs", it would have specifically done so, but it has not.

(3) Plaintiff has not been discriminated against because no other child is receiving such a service and no person is attempting to prevent plaintiff from receiving such medical service.

In analyzing the language of the statute in question, we look to both the Michigan Constitution, other sections of the HCRA and to § 402 of the Michigan Civil Rights Act,[4] which had the same effective date as the HCRA and which provides some guidance in interpreting the language at issue.

[4] MCL 37.2402; MSA 3.548(402).

Article 8, § 8 of the 1963 Michigan Constitution declares education of the handicapped should "always be fostered and supported". The dispositive issue at bar is whether this constitutional policy has been implemented by legislation which affords plaintiff the affirmative right to have the services she seeks.

Defendant Pontiac notes that MCL 37.1302; MSA 3.550(302) of the HCRA states that a person shall not:

"(a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of a handicap that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids."

This statutory provision relates to places of accommodation. The language is identical to that used in MCL 37.1402; MSA 3.550(402). If plaintiff's interpretation of the statutory language is correct, places of public accommodation would also have to provide affirmative services. Such an interpretation would involve the judiciary in a course of plainly impractical case-by-case assessments of the relative rights and burdens of plaintiffs and owners of public facilities; hotels, restaurants, or, as the trial judge noted, a football stadium would have to offer medical services similar to those to which plaintiff claims she is entitled.

Further, MCL 380.1178; MSA 15.41178 is specific in providing that for a school administrator or teacher to administer medication to a student, it must be "in the presence of another adult pursu-

ant to written permission of the pupil's parents or guardian and in compliance with the instructions of a physician". This section, which protects the teacher from liability except in cases of gross negligence or wantonness, sets forth a rigid procedure for a school to follow. We cannot assume that the Legislature meant to extend, by implication only, a school district's duty to provide medical services when it has been so careful to restrict that authority explicitly by statute.

We find plaintiff's argument that she is being discriminated against because she uses an adaptive device misleading. Plaintiff's dilemma is not in her use of such an adaptive device, but rather, that she is not able to use the aid when her condition requires it. The trial judge was of the opinion that it is the "parents' responsibility to provide such medical procedures" and that the HCRA neither requires nor authorizes the defendants to assume such responsibility. With this, we must agree.

Looking to § 402 of the Michigan Civil Rights Act[5] gives no credence to plaintiff's argument that MCL 37.2402; MSA 3.548(402) imposes greater affirmative duties of nondiscrimination with regard to the handicapped than it did with regard to religion, race, color, national origin or sex. The applicable section of the HCRA reads:

"Sec. 402. An educational institution shall not:

"(a) Discriminate in any manner in the full utilization of or benefit from the institution, or the services provided and rendered thereby to an individual because of a handicap that is unrelated to the individual's ability to utilize and benefit from the institution or its services, or because of the use by an individual of adaptive devices or aids."

[5] The March 31, 1977 effective date of § 402 being the same as that of the HCRA.

This section can be compared with § 402 of the Michigan Civil Rights Act:

"Sec. 402. An educational institution shall not:
"(a) Discriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of religion, race, color, national origin, or sex."

The similarity between subsections 402(a), as well as the organization of the two acts, indicates an intent by the Legislature to give handicappers a general civil right to nondiscrimination in employment (Article 2), public accommodation (Article 3), education (Article 4), and housing (Article 5).[6] The Legislature chose to deal with the handicapped in a separate, companion act to the Michigan Civil Rights Act. In none of the terms of the HCRA do we find more duties imposed in regard to a handicapped person than to one who may be discriminated against due to religion, race, color, national origin or sex.

The handicappers statute is aimed at eradicating the old assumptions that handicappers cannot work or should be kept out of public places. We direct plaintiff to other Michigan statutes which may place affirmative duties to accommodate the handicapped.[7] However, plaintiff's claim is brought exclusively under the HCRA.

Although this opinion precludes plaintiff's claim under the HCRA, we do not suggest that we view plaintiff's request for relief as unmeritorious. Further, our opinion should not be interpreted as giving school districts a carte blanche to limit

[6] MCL 37.1101 et seq.; MSA 3.550(101) et seq.

[7] See, MCL 380.1701 et seq.; MSA 15.41701 et seq.; MCL 125.1351 et seq.; MSA 3.447(121) et seq.

special education programs to benefit those children who may be accommodated most conveniently and economically. The Michigan Constitution declares that the state is to encourage those in Staci's position to receive the education she is entitled to under law. Our opinion merely indicates that plaintiff's remedy is not to be found within the act under which she seeks relief.

The HCRA applies when the handicap is "unrelated to the individual's ability to utilize and benefit from the institution or its services".[8] If one is unable to utilize the school because of a handicap, the HCRA does not apply. This appears to be so in Staci Dady's case.

Affirmed.

---

[8] MCL 37.1402(a); MSA 3.550(402)(a).