LITTSEY v BOARD OF GOVERNORS OF WAYNE STATE
UNIVERSITY

Docket No. 48999. Submitted January 19, 1981, at Detroit.—Decided
August 5, 1981. Leave to appeal applied for.

Keith Littsey brought an action against the Board of Governors
of Wayne State University, alleging damages resulting from
discrimination against him by the university in violation of the
Handicappers' Civil Rights Act (HCRA) and seeking an injunc-
tion ordering his reinstatement as a student. Defendant moved
for accelerated and summary judgment, which motions were
granted, Wayne Circuit Court, Joseph G. Rashid, J. He appeals,
alleging that the trial court erred in granting defendant's
motion for accelerated judgment on the ground that a claim
brought under the HCRA must be initiated in the Court of
Claims and in granting summary judgment on the grounds that
there was no genuine issue as to any material fact and that he
failed to state a claim upon which relief could be granted. *Held:*

1. The trial court erred in holding that a claim brought
under the HCRA must be initiated in the Court of Claims. The
jurisdiction of the Court of Claims is subject to legislative
limitations. The procedures for bringing an action under the
HCRA are governed by those contained in the Elliott-Larsen
Civil Rights Act which confers jurisdiction on the circuit courts.

2. The trial court erred in granting defendant's motion for
summary judgment on the ground that there was no genuine
issue as to any material fact. The record reveals that a question

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 20 Am Jur 2d, Courts §§ 18, 33.
[2, 3] 20 Am Jur 2d, Courts, §§ 17, 18, 33.
[4, 7, 8] 51 Am Jur 2d, Civil Rights § 61 *et seq.*
    68 Am Jur 2d, Schools § 219.
[5, 6] 73 Am Jur 2d, Summary Judgment §§ 15, 32-34.
    Propriety of considering answers to interrogatories in determining
        motion for summary judgment. 74 ALR2d 984.
[6] 73 Am Jur 2d, Summary Judgment § 29.
[9] 68 Am Jur 2d, Schools § 52.
[10] 73 Am Jur 2d, Summary Judgment § 26.

existed regarding whether a discriminatory act was committed by defendant.

3. The trial court erred in granting defendant's motion for summary judgment on the ground that plaintiff failed to state a claim upon which relief could be granted. The record reveals that plaintiff stated a proper claim.

4. Upon remand a determination of the cause of action should be based only on facts which occurred in the fall, 1977, semester, and the only damages to which plaintiff would be entitled are those recoverable under the HCRA.

Reversed and remanded.

Cynar, J., dissented. He would agree that the trial court erred in granting accelerated judgment on the ground that the action should have been brought in the Court of Claims, but would hold that the trial court properly granted summary judgment on the ground that there was no genuine issue of any material fact based on the doctrine of nonintervention of courts in matters involving academic decisions and plaintiff's failure to show any arbitrary, capricious, or discriminatory action on the part of school officials. He would affirm.

OPINION OF THE COURT

1. COURTS — COURT OF CLAIMS — CIRCUIT COURTS — JURISDICTION — STATUTES.

The Court of Claims has exclusive jurisdiction over claims against the state, including claims against a state university, but such jurisdiction is narrow and is limited by statutory provisions which expressly confer jurisdiction to hear certain claims against the state upon the circuit courts (MCL 600.6419; MSA 27A.6419).

2. COURTS — COURT OF CLAIMS — JURISDICTION — STATUTES.

The Court of Claims was created by the Legislature and not the Michigan Constitution; it derives its powers from the act of the Legislature and is subject to the limitations imposed (MCL 600.6419; MSA 27A.6419).

3. COURTS — CIRCUIT COURTS — COURT OF CLAIMS — CIVIL RIGHTS — JURISDICTION — STATUTES.

A circuit court, rather than the Court of Claims, has jurisdiction to hear claims against the state brought under the Handicappers' Civil Rights Act or the Elliott-Larsen Civil Rights Act (MCL 37.1101 et seq., 37.2101 et seq.; MSA 3.550[101] et seq., 3.548[101] et seq.).

4. SCHOOLS — HANDICAPPED PERSONS — CIVIL RIGHTS — STATUTES.

An educational institution may not discriminate in any matter so as to deny a handicapped person the full utilization or benefit of the institution or the services which it renders where his handicap is unrelated to his ability to utilize and benefit from such institution or its services or because of his use of an adaptive device or aid; nor may it exclude, expel, limit, or otherwise discriminate against a handicapped individual seeking admission or enrolled as a student because of such handicap (MCL 37.1402; MSA 3.550[402]).

5. MOTIONS AND ORDERS — SUMMARY JUDGMENT — COURT RULES.

A trial court, in determining whether to grant a motion for summary judgment on the ground that there is no genuine issue as to any material fact, should give the benefit of any reasonable doubt to the nonmoving party, drawing inferences in favor of that party; the court should consider affidavits, pleadings, depositions, and other documentary evidence submitted by the parties but should not make findings of fact or weigh the credibility of the affiants or deponents, and should grant the motion only where it finds that it is impossible for the claim to be supported during trial because of some deficiency which cannot be overcome (GCR 1963, 117.2[3]).

6. MOTIONS AND ORDERS — SUMMARY JUDGMENT — COURT RULES.

A trial court, in determining a motion for summary judgment on the ground that the nonmoving party has failed to state a claim upon which relief may be granted, should look only to the pleadings, accepting as true all well-pleaded facts contained therein, and where the claim, on the pleadings, is so clearly unenforceable as a matter of law that no factual development possibly could justify a right to recovery the motion should be granted; however, where the resolution of a legal issue may depend greatly upon the factual context, summary judgment on the pleadings is never proper (GCR 1963, 117.2[1]).

7. SCHOOLS — COURTS — HANDICAPPED PERSONS — CIVIL RIGHTS — STATUTES.

A trial court, in determining whether an educational institution, by its policies, is in violation of the Handicappers' Civil Rights Act, should balance the burden which would be placed on the institution in providing a handicapped person the aid he requires to compete equally against such individual's right to the assistance, and where the burden outweighs such right the institution should not be held to be in violation (MCL 37.1101 et seq.; MSA 3.550[101] et seq.).

8. SCHOOLS — HANDICAPPED PERSONS — CIVIL RIGHTS — ADAPTIVE
   DEVICES — STATUTES.

   An inflexible policy on the part of an educational institution or
   its professors which forbids deaf or hearing-impaired students
   from using an adaptive device such as a tape recorder neces-
   sary to permit them to benefit from class lectures is violative of
   the Handicappers' Civil Rights Act (MCL 37.1402[b]; MSA
   3.550[402][b]).

### DISSENT BY CYNAR, J.

9. SCHOOLS — COURTS — ACADEMIC DECISIONS — JUDICIAL REVIEW.

   *Courts should abstain from entertaining claims involving aca-
   demic decisions except where it clearly is shown that a plain-
   tiff's particular, ascertainable right was breached, and in deter-
   mining whether such right was breached a court should pre-
   sume the decision to be valid until the plaintiff shows wrongful
   discrimination or arbitrary and capricious action on the part of
   the institution.*

10. MOTIONS AND ORDERS — SUMMARY JUDGMENT — SCHOOLS —
    ACADEMIC DECISIONS.

    *A trial court may grant a motion for summary judgment on the
    ground that there is no genuine issue of fact where a student
    brings an action involving an academic decision against an
    educational institution which he has attended and fails to
    demonstrate bad faith, arbitrariness, or capriciousness on the
    part of the institution (GCR 1963, 117.2[3]).*

*Lawrence Ellenbogen,* for plaintiff.

Office of General Counsel, Wayne State Univer-
sity (by *Patricia Eames, Elmer L. Roller, Kenneth
A. McKanders,* and *Robert A. Vieweg),* for defen-
dant.

Before: N. J. KAUFMAN, P.J., and M. J. KELLY
and CYNAR, JJ.

N. J. KAUFMAN, P.J. Plaintiff appeals from a
grant of accelerated and summary judgment by
the Wayne County Circuit Court.

Plaintiff initiated this cause in Wayne County
Circuit Court on July 25, 1979. This action was

premised on alleged violations of the Michigan Handicappers' Civil Rights Act, MCL 37.1101 *et seq.;* MSA 3.550(101) *et seq.,* by defendant, which resulted in plaintiff's dismissal from the Wayne State University Law School.

In his complaint, plaintiff alleged that he had lost substantially all of the hearing in his left ear because of the amputation of that ear drum. During the fall semester of 1977, plaintiff requested permission from two of his professors as well as from a law school dean to tape-record specific lectures because of his hearing impediment. Plaintiff claims that such permission was denied by one professor and that the dean, while giving permission to plaintiff to tape-record lectures, did not send a memo notifying plaintiff's professors that such accommodation should be made. Plaintiff asserts that as a result of his hearing problems, plaintiff received a C minus in one course and withdrew from the other. Plaintiff prayed for an injunctive order restoring him to law school and further claimed damages in tort.

Defendant responded by way of motions for accelerated and/or summary judgment. Defendant contended that only the Court of Claims had jurisdiction to hear this cause of action against a state agency, according to MCL 600.6419; MSA 27A.6419. One portion of the motion for summary judgment was premised on GCR 1963, 117.2(1). Defendant alleged that plaintiff had failed to state a claim upon which relief could be granted, in that plaintiff had misconstrued the Handicappers' Civil Rights Act (hereinafter HCRA) as creating a duty affirmatively to accommodate handicapped law students. The other portion of the motion for summary judgment was based upon GCR 1963, 117.2(3), the lack of existence of a genuine issue of

material fact. Defendant argued that plaintiff failed to make any causal connection between his handicap and his termination as a law student.

Defendant attached various affidavits to its motions, including one by evidence professor Ralph Slovenko. Professor Slovenko stated that while he remembered a student asking permission to tape, he did not recall that such student ever represented that he had an auditory problem which prevented him from properly hearing lectures. Plaintiff's affidavit and objection to defendant's motions set forth the history and extent of his hearing problems. In his affidavit, plaintiff reiterated his attempts to gain approval to use his tape recorder. At the time he made such attempts, his left ear was fully bandaged because of a recent operation. Plaintiff related his hearing deficiency to his lack of success in law school during the semester in question, which was his last, because of his poor grades.

In granting accelerated judgment, the trial court concluded that the Court of Claims was the proper forum in which to bring this action.

The trial court also granted defendant's motion for summary judgment, based on GCR 1963, 117.2(3) and (1). Plaintiff brings this appeal as of right, pursuant to GCR 1963, 806.1.

Plaintiff first contends that the trial court erred in granting accelerated judgment on the basis that an action under the HCRA against a state agency must be initiated in the Court of Claims.

The Court of Claims has exclusive jurisdiction over claims against the state. MCL 600.6419; MSA 27A.6419. This includes claims against a state university. *Fox v Board of Regents of University of Michigan,* 375 Mich 238; 134 NW2d 146 (1965), *Sprik v Regents of University of Michigan,* 43

Mich App 178; 204 NW2d 62 (1972), *aff'd* 390 Mich 84; 210 NW2d 332 (1973).

MCL 600.6419(4); MSA 27A.6419(4) limits the jurisdiction of the Court of Claims as follows:

"(4) This chapter shall not be construed so as to deprive the circuit courts of this state of jurisdiction over actions brought by the taxpayer under the provisions of Act No. 167 of the Public Acts of 1933 or any other actions against state agencies based upon the statutes of the state of Michigan in such case made and provided, *which expressly confer jurisdiction* thereof upon the circuit courts, nor of the proceedings to review findings as provided in Act No. 1 of the Public Acts of the Extra Session of 1936, or any other similar proceedings expressly authorized by the statutes of the state of Michigan in such case made and provided." (Emphasis added.)

The Court of Claims is a "legislative court" and not a "constitutional court" and derives its powers only from the act of the Legislature and is subject to the limitations therein imposed. *Manion v State Highway Comm'r,* 303 Mich 1; 5 NW2d 527 (1942), *cert den* 317 US 677; 63 S Ct 159; 87 L Ed 543 (1942). The Legislature created a Court of Claims as a substitute "for the 'board of State auditors' and the 'State administrative board' for the purpose of hearing and determining 'all claims and demands, liquidated and unliquidated, *ex contractu* and *ex delicto* against the State' * * *". *Id.,* 20. *Taylor v Auditor General,* 360 Mich 146, 150; 103 NW2d 769 (1960). Thus, the jurisdiction granted to the Court of Claims is "narrow and limited, substituting, merely, a 'court' of claims for the superseded claims jurisdiction of the earlier boards". *Id.*

The HCRA sets forth the following complaint procedure:

"SEC. 605. A complaint alleging an act prohibited by this act shall be subject to the same procedures as a complaint alleging an unfair employment practice under Act No. 251 of the Public Acts of 1955, as amended, being sections 423.301 to 423.311 of the Michigan Compiled Laws, or under the existing state law dealing with unfair employment practices if Act No. 251 of the Public Acts of 1951, as amended, is repealed." MCL 37.1605; MSA 3.550(605).

1955 PA 251 was part of the former Michigan State Fair Employment Practices Act, which was repealed by 1976 PA 453, effective March 31, 1977. At the same time that 1955 PA 251 was repealed, a new act, known as the Elliott-Larsen Civil Rights Act, MCL 37.2101; MSA 3.548(101), was passed. The act provides the following complaint procedure:

"SEC. 801(1). A person alleging a violation of this act may bring a civil action for appropriate injunctive relief or damages, or both.
"(2) An action commenced pursuant to subsection (1) may be brought in the circuit court for the county where the alleged violation occurred, or for the county where the person against whom the civil complaint is filed resides or has his principal place of business.
"(3) As used in subsection (1), 'damages' means damages for injury or loss caused by each violation of this act, including reasonable attorney's fees." MCL 37.2801; MSA 3.548(801).

This Court cannot accept defendant's contention on appeal that § 801 is strictly a venue statute, not affecting the exclusive jurisdiction of the Court of Claims in actions against a state university. Actions brought pursuant to either the HCRA or the Elliott-Larsen Civil Rights Act are constitutional claims. Under the latter act, the circuit courts have jurisdiction, and § 605 of the HCRA states

that a complaint filed under the HCRA must comport with the procedural provisions of the existing state law dealing with fair employment practices, that is, the Elliott-Larsen act. It is, therefore, our opinion that the Court of Claims would have no jurisdiction over the instant case. For this reason, the trial court erred in granting defendant's motion for accelerated judgment on the ground that the Court of Claims had exclusive jurisdiction over the subject cause.

Plaintiff next argues that the trial court erred in finding no genuine issue as to any material fact and in entering summary judgment pursuant to GCR 1963, 117.2(3).

The Michigan HCRA provides in pertinent part:

"SEC. 402. An educational institution shall not:

"(a) Discriminate in any manner in the full utilization of or benefit from the institution, or the services provided and rendered thereby to an individual because of a handicap that is unrelated to the individual's ability to utilize and benefit from the institution or its services, or because of the use by an individual of adaptive devices or aids.

"(b) Exclude, expel, limit, or otherwise discriminate against an individual seeking admission as a student or an individual enrolled as a student in the terms, conditions, and privileges of the institution, because of a handicap that is unrelated to the individual's ability to utilize and benefit from the institution or because of the use by an individual of adaptive devices or aids." MCL 37.1402; MSA 3.550(402).

The trial court's order of November 30, 1979, granted defendant's motion for summary judgment pursuant to GCR 1963, 117.2(1) (failure to state a claim) and 117.2(3) (no genuine issue of material fact).

The events at issue are those which occurred

during the fall, 1977, semester, after plaintiff had been readmitted to law school provisionally, following termination in June, 1976, because of unsatisfactory academic performance. Plaintiff's readmission was expressly conditioned upon his achievement of a 2.33 grade point average during the fall term. Plaintiff had undergone ear surgery in August, 1977, and had not regained any hearing in the affected ear by the time the fall term began. Plaintiff was terminated by the law school after he received a 1.85 grade point average for course work completed during the term in question.

Plaintiff filed suit under the HCRA on the ground that the university discriminated against him by refusing to permit him to use a tape recorder in certain classes. The complaint specified two fall, 1977, classes—Evidence, taught by Professor Slovenko, and Professional Responsibility, taught by Judge Horace Gilmore. Plaintiff's affidavit states that when he asked Judge Gilmore if he could use a tape recorder because of his surgery and hearing difficulties, Judge Gilmore indicated that he had no objection as long as the school administration concurred. Plaintiff's affidavit further indicates that Dean Sharon Brown, Dean of Student Affairs, stated that she did not object to plaintiff's use of a tape recorder in his classes; however, she did not notify plaintiff's instructors officially as plaintiff requested.

Plaintiff also stated that Professor Slovenko refused plaintiff permission to use a tape recorder in Evidence class, despite plaintiff's request during the first week of class for such permission because plaintiff just had undergone ear surgery and was having hearing difficulty. Professor Slovenko, in his affidavit, stated that he did tell a student during the fall, 1977, term that tape-recording of

the class would not be permitted. However, Slovenko also stated that he did not recall plaintiff as being the individual who requested to tape the class, that he did not recall plaintiff as ever indicating that he had a hearing problem, and that many seats were available at the front of the classroom, in proximity to the lecturer, for any individual with an auditory problem.

As this Court views the instant situation, a possible issue of fact which might have aided plaintiff in withstanding defendant's motion for summary judgment did exist. The trial court never resolved the dispute regarding whether plaintiff had informed Professor Slovenko that he had a hearing problem when plaintiff requested to tape the class.

With respect to a motion for summary judgment on the ground that there is no genuine issue as to any material fact, the court should give the benefit of any reasonable doubt to the opposing party and should not grant summary judgment unless it finds that "it is impossible for the claim * * * to be supported at trial because of some deficiency which cannot be overcome". *Rizzo v Kretschmer,* 389 Mich 363, 372; 207 NW2d 316 (1973). Inferences are to be drawn in favor of the one opposing the motion, and the court is to consider the affidavits, pleadings, depositions, and other documentary evidence submitted by the parties when determining whether or not to grant summary judgment. *Gamet v Jenks,* 38 Mich App 719, 723; 197 NW2d 160 (1972), *Sanders v Clark Oil Refining Corp,* 57 Mich App 687; 226 NW2d 695 (1975). In ruling that no issues of fact exist, the court must be careful to avoid substituting a trial by affidavit and deposition for a trial by jury, and the court is not allowed to make findings of fact nor to weigh

the credibility of affiants or deponents. *Northern Plumbing & Heating, Inc v Henderson Brothers, Inc,* 83 Mich App 84; 268 NW2d 296 (1978), *lv den* 405 Mich 845 (1979).

Although the documentary evidence seems to indicate that plaintiff may not have informed the law school administration adequately of his handicap and his need to tape-record his classes, it is our opinion that a factual issue did exist as to whether a discriminatory act was, indeed, committed by defendant board. Admittedly, the issue is close. However, drawing any inferences in favor of plaintiff leads us to the conclusion that the grant of summary judgment under GCR 1963, 117.2(3) was improper.

The third issue on appeal is closely related to the issue just resolved. Although plaintiff frames this issue differently, his claim, in essence, is that, as a matter of law, Wayne State University violated the HCRA. This issue is addressed to the grant of summary judgment under GCR 1963, 117.2(1), that is, that the opposing party has failed to state a claim upon which relief may be granted. A motion for summary judgment under GCR 1963, 117.2(1) is to be tested only by the pleadings. *Todd v Biglow,* 51 Mich App 346, 349; 214 NW2d 733 (1974), *lv den* 391 Mich 816 (1974). In examining those pleadings, a court must accept as true the well-pleaded facts contained therein. *Weckler v Berrien County Road Comm,* 55 Mich App 7; 222 NW2d 9 (1974). The test is whether the plaintiff's claim, on the pleadings, is so clearly unenforceable as a matter of law that no factual development possibly can justify a right to recovery. *Crowther v Ross Chemical & Manufacturing Co,* 42 Mich App 426, 431; 202 NW2d 577 (1972). Where the resolution of a legal issue may depend greatly upon the

factual context, summary judgment on the pleadings is never proper.

In *Dady v Rochester School Board,* 90 Mich App 381; 282 NW2d 328 (1979), this Court upheld a lower court's grant of summary judgment for failure to state a claim upon which relief could be granted where the plaintiff contended that the HCRA imposed a duty on a school board to provide affirmative medical services—administering periodic catheterization during school hours to a child who required such treatment as a condition to attending school. This Court held that the HCRA imposes no affirmative duty on a school to extend *such* services to the handicapped.

This Court does not agree with defendant's contention that *Dady* is analogous to the case at bar. The instant case does not involve a claim that Wayne State University was duty bound to undertake an affirmative program with respect to treating or alleviating a student's handicap. Plaintiff's claim in the instant action implies that Wayne State University had a passive duty not to interfere with "the full utilization of or benefit from the institution" under MCL 37.1402; MSA 3.550(402) by preventing a hearing-impaired student from tape-recording lectures if a student otherwise could not benefit adequately from class lectures. The situation is analogous to the duty to permit blind students to use Seeing Eye dogs in a university building. (See Department of Health and Human Services regulation 45 CFR § 84.1 *et seq.* [1980], interpreting the Rehabilitation Act of 1973, 29 USC 794).

We find defendant's total reliance on *Dady* misplaced. Recognizing that *Dady* is the only case in which this Court has spoken on the mandates of the HCRA, we nevertheless find untenable defen-

dant's conclusion that even if plaintiff adequately had made the university aware of his handicap, the university's alleged refusal to allow him to tape class lectures would not violate the HCRA. Arguing that the act places no affirmative duties on the university to accommodate the handicapped, defendant concludes that, by passage of HCRA, the Legislature intended to "permit", but not require, an educational institution to adopt affirmative action policies regarding the handicapped. Defendant argues that granting plaintiff's request to tape lectures would have given plaintiff a preference not granted other students. We cannot accept defendant's convoluted and somewhat callous interpretation of the act. Indeed, *Dady* does not go so far. *Dady, supra,* 390.

It is our belief that the balance to be struck herein is whether the burden to the institution in providing plaintiff with the aid he needs to compete equally outweighs his individual right to such assistance. In *Dady,* the burden on the institution was found to be too high. However, the *Dady* Court was clear in stating that:

"[O]ur opinion should not be interpreted as giving school districts a carte blanche to limit special education programs to benefit those children who may be accommodated most conveniently and economically." *Id.,* 390-391.

In our view, an inflexible policy on the part of the university administration or its professors forbidding deaf or hearing-impaired students from undertaking those measures necessary to permit them to benefit from class lectures would be violative of the HCRA, § 402(b), *supra.* Allowing the use of an adaptive device such as a tape recorder is not analogous to requiring the university to pro-

vide medical or other services to permit a handicapped student to attend school. A tape recorder is the least obtrusive device which plaintiff could have used, and is, in fact, the only device adapted to his purpose.

Although in no way binding upon this Court, we find instructive a regulation of the Department of Health and Human Services to be used in connection with § 504 of the Rehabilitation Act of 1973, 29 USC 794. This regulation is entitled "Nondiscrimination on the Basis of Handicap in Programs and Activities Receiving Benefits from Federal Financial Assistance". In subpart E—"Postsecondary Education" the following regulation was promulgated:

"b) *Other rules.* A recipient to which this subpart applies may not impose upon handicapped students other rules, *such as the prohibition of tape recorders in classrooms* or of dog guides in campus buildings, that have the effect of limiting the participation of handicapped students in the recipient's education program or activity." 45 CFR § 84.44 (1980). (Emphasis supplied.)

Our conviction that summary judgment was improper under GCR 1963, 117.2(1) in that plaintiff has stated a claim under which relief could be granted, coupled with our hesitation regarding the propriety of the grant of summary judgment under GCR 1963, 117.2(3), leads us to the conclusion that the grant of summary judgment in the instant case was not proper.

We note the contradiction in the trial court's grant of accelerated judgment on the ground that it had no jurisdiction, and the grant of summary judgment on plaintiff's claims under GCR 1963, 117.2(1) and (3). Although we do not believe that these conflicting judgments have prejudiced either

party, we reiterate our holding that jurisdiction in the circuit court was proper and that, therefore, the granting of accelerated judgment was error.

Upon remand, if this case proceeds to trial, a determination of the cause of action should be made on the basis of facts occurring only during the fall semester of 1977. Furthermore, since plaintiff brought his case under the HCRA, the only damages to which plaintiff shall be entitled, if any, are those recoverable under that act.

Reversed and remanded in accordance with this opinion. We do not retain jurisdiction.

M. J. KELLY, J., concurred.

CYNAR, J. *(dissenting)*. I am in agreement with the majority that the trial court erred in granting an accelerated judgment on the factual basis herein, contending that the action must be initiated in the Court of Claims. The plaintiff commenced his action in a proper forum, the circuit court. Further, I am in accord that if plaintiff adequately had made the university aware of his handicap, the university's alleged refusal to allow him to tape class lectures, if established as a cause of poor academic performance, would have violated the HCRA. All the same, while one must be respectful of the efforts made by the plaintiff in his endeavors to continue in law school, the trial court did rule correctly in granting a summary judgment based upon GCR 1963, 117.2(3), the lack of existence of a genuine issue of material fact, as well as under GCR 1963, 117.2(1).

The following facts are not disputed in the lower court. Plaintiff applied for admission to Wayne State University's Law School in March, 1974. The plaintiff answered on an admissions application that he was not aware of any physical disability

during the last five years preceding the application. On May 24, 1974, Dean Hain of the law school informed plaintiff that he was not qualified for admission under the normal criteria but that he would be considered for the Summer Minority Program which had been created in order to assist economically disadvantaged students who were unable to meet traditional standards to obtain a Juris Doctor degree. All students were and are required to meet the academic requirement that they complete 120 hours of course work with a grade point average of 2.00 or better.

After first being placed on a waiting list, plaintiff was admitted into the Summer Minority Program in June, 1974. Students accepted into the Summer Minority Program were required to receive a final grade average of C minus or better in the two courses offered during the summer as a prerequisite to admission into the law school in September, 1974. Plaintiff fulfilled the requirements of the program and entered law school in the fall term of 1974.

In the normal academic year (September through May), a student must maintain a 2.00 grade point average in order to be considered in good standing with the law school. If a student achieves a grade point average which is above 1.65 but below 2.00, he will be placed on probation and allowed a full academic year to reinstate himself in good standing with the law school. Following the 1974-75 school year, the plaintiff attained a grade point average of 1.88. Consequently, he was placed on academic probation. In accordance with the above-quoted requirements, Mr. Littsey was required to attain a 2.00 grade point average in all courses taken during the 1975-76 school year. He was notified that failure to meet this standard

would result in academic termination from the law
school at the end of that academic year. On the 15
credits plaintiff completed in the fall term, his
grade point average fell below 2.00. By letter dated
February 10, 1976, the law school again informed
plaintiff of the requirements of his academic pro-
bation and offered assistance to plaintiff in his
effort to meet the requirements. Plaintiff, however,
again received a grade point average of below 2.00
for work completed during the winter term, 1976,
and his cumulative grade point average remained
below 2.00. Because plaintiff failed to meet the
terms of his probation, he was terminated academ-
ically in June, 1976.

In June, 1977, one full year after his termina-
tion, plaintiff petitioned the Readmissions Commit-
tee to readmit him to law school for the fall term,
1977. In his petition, he explained that a hearing
problem and marital problems had contributed to
his poor academic performance in law school. He
assured the committee that these problems had
been resolved. He advised the committee that he
had had an operation performed on his left ear in
December, 1976, which had successfully restored
some hearing to his left ear. He further stated
that a final operation was scheduled which should
restore his hearing to within a socially acceptable
level. Mr. Littsey further indicated to the commit-
tee that the emotional upheaval which resulted
from his divorce had subsided. In all matters, he
indicated that he was ready to undertake law
school without the previous impediments.

Based on the information presented and Mr.
Littsey's representations, the Readmissions Com-
mittee granted plaintiff's petition and readmitted
him to law school beginning with the fall term,
1977. Plaintiff's readmission was expressly condi-

tioned upon his achieving a 2.33 grade point average (C plus) or better on courses taken during the fall term, 1977. He was also required to seek counselling in order to increase his chances for success. Plaintiff was informed that failure to meet these requirements would result in academic termination from the law school. Twenty-five individuals petitioned for readmission during 1977. Plaintiff was one of seven individuals readmitted to the law school during that year.

Plaintiff enrolled in law school in September, 1977, taking 17 credit hours. He withdrew from the three-credit course, Professional Responsibility, prior to the end of the term and received no grade or credit for this course. Plaintiff's grade point average was 1.85 (C minus) on the course work completed during the fall term, 1977. As his grade point average was below that required as a condition of his readmission, plaintiff was terminated academically from the law school.

In a letter dated February 6, 1978, plaintiff petitioned Arthur Lombard for permission to continue for another semester. He claimed that the August, 1977, operation on his left ear had caused him to fall behind in his work. However, since a hearing test administered in December, 1977, showed that his ear was operating well within the socially acceptable level, he felt that he could accomplish more in school. Plaintiff made no mention of any alleged problems caused by his not being able to tape-record certain lecture sessions during the fall term, 1977. He merely stated, once again, that he would do better in the future.

In a conference with Mr. Littsey, Arthur Lombard explained that it was not within his power or discretion to reverse or modify the decision of the committee. He also stated that the committee was

no longer constituted, as it exists only for a short time in the summer months. Plaintiff did not present any further petitions to the Readmissions Committees, although two committees have been so constituted since plaintiff's ultimate termination from law school.

On July 25, 1979, plaintiff filed suit against Wayne State University, alleging violation of the Michigan Handicappers' Civil Rights Act and seeking an injunction ordering his reinstatement into law school and appropriate damages and costs.

In the area of judicial intervention into academic affairs, it is established that courts will venture into the academic arena only insofar as to determine whether the college's actions were arbitrary or capricious or motivated by bad faith. The United States Supreme Court has expressed its agreement with these principles in *Board of Curators of University of Missouri v Horowitz,* 435 US 78; 98 S Ct 948; 55 L Ed 2d 124 (1978). The law in this particular area indicates the following: courts subscribe to the theory of judicial abstention in matters concerning university academic decisions unless it clearly is shown that a particular and ascertainable right was breached. In ascertaining whether said right may have been breached, the following criteria are applied: (1) there is a presumption of validity for an academic decision and (2) plaintiff must show: (a) wrongful discrimination or (b) arbitrary and capricious action *(i.e.,* bad faith). See *Connelly v University of Vermont & State Agricultural College,* 244 F Supp 156 (D Vt, 1965), *Keys v Sawyer,* 353 F Supp 936 (SD Tex, 1973).

Plaintiff, Littsey, requested direct judicial intervention into academic judgments of the law school. The trial court found that a rational basis existed

for plaintiff's termination from law school. Plaintiff's poor academic record while in attendance at the law school provided this rational basis. He did not and could not demonstrate bad faith, arbitrariness, or capriciousness.

It is an indisputable principle of law that courts will not interfere with the management of a university's internal affairs unless there has been "a manifest abuse of discretion or where [the school officials'] action has been arbitrary or unlawful". *State ex rel Sherman v Hyman,* 180 Tenn 99, 113; 171 SW2d 822 (1942), or unless the school authorities have acted "arbitrarily or capriciously", *Frank v Marquette University,* 209 Wis 372, 377; 245 NW 125 (1932), or unless they have abused their discretion, *People ex rel Bluett v Board of Trustees of University of Illinois,* 10 Ill App 2d 207; 134 NE2d 635 (1956), *Coffelt v Nicholson,* 224 Ark 176; 272 SW2d 309 (1954), or acted "in bad faith", *Barnard v Inhabitants of Shelburne,* 216 Mass 19; 102 NE 1095 (1913).

The courts have followed the doctrine of nonintervention where there is no showing of arbitrary, capricious, or discriminatory action on the part of the school officials.

The United States Supreme Court has consistently abstained and granted due deference to academic judgments:

"Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems * * *." *Epperson v Arkansas,* 393 US 97, 104; 89 S Ct 266; 21 L Ed 2d 228 (1968).

The Court has been especially viligant to protect and reinforce the academic freedom to meet and confer on academic criteria and standards. See

*e.g., Horowitz, supra, Regents of University of California v Bakke,* 438 US 265; 98 S Ct 2733; 57 L Ed 2d 750 (1978).

The trial court, in recognizing the doctrine of judicial noninterference and, further, in finding no genuine issue of fact, entered summary judgment in favor of defendant. The trial court's determination should be affirmed for reasons stated herein.