CONNECTICUT INSTITUTE FOR THE BLIND *v.* CONNECTICUT COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

COTTER, C. J., LOISELLE, BOGDANSKI, SPEZIALE and PETERS, Js.

Argued May 11—decision released September 5, 1978

*Charles A. Overend,* assistant attorney general, with whom, on the brief, were *Carl R. Ajello,* attorney general, *Bernard F. McGovern, Jr.,* assistant attorney general, *Philip A. Murphy, Jr.,* and *Eva R. M. Thurman,* for the appellant (defendant).

*Brian Clemow,* with whom, on the brief, was *Brenda A. Eckert,* for the appellee (plaintiff).

*Sperry A. DeCew,* as amicus curiae.

*Bert N. Bisgyer* and *John Rose,* as amici curiae.

*David C. Shaw, Joan E. Pilver* and *Jonathan Lang,* as amici curiae.

PETERS, J. This is an appeal by the Commission on Human Rights and Opportunities. The commission, acting on the complaint of a person handicapped by virtue of a visual disability, found that the Connecticut Institute for the Blind had unlawfully refused employment to the complainant, in violation of § 31-126 of the General Statutes. The Institute filed a petition to the Court of Common

Pleas praying that this determination be modified or set aside. The court disallowed the claim of discrimination. The commission now asks this court to review and to reverse the judgment of the court below.

The facts on which the commission acted are as follows: The complainant in this case is Ellen Steinberg Schuman.[1] The respondent before the commission, and the plaintiff in the trial court, is the Connecticut Institute for the Blind (hereinafter referred to as the Institute) which operates the Oak Hill School for the Blind in Hartford. The defendant in the trial court is the Commission on Human Rights and Opportunities.

The complainant was employed by the Institute in the Oak Hill School's upper school, in the position of teacher's aide, from February to June of 1974. Her employment was terminated in June of 1974 when her position was abolished for budgetary reasons; her work record was satisfactory despite her visual impairment. The complainant then applied for a teacher's aide position in the Oak Hill School's lower school. She was denied employment primarily because the Institute determined that this position required a person with "normal visual acuity" since it entailed supervision of young children with severe multiple disabilities. "Normal visual acuity" was stated by the personnel director of the Oak Hill School to require "20/20 vision." The complainant's vision is impaired because of congenital cataracts in both eyes and by congenital

---

[1] The complaint was initially signed by Ellen Steinberg who, as the result of her subsequent marriage, changed her name to Ellen Steinberg Schuman.

nystagmus; her central acuity with corrective lenses is in the range of 20/45 to 20/50, with blurring caused by the nystagmus.

The complainant filed a complaint with the defendant Commission on Human Rights and Opportunities alleging that the plaintiff's failure to consider her for employment as a teacher's aide in the position specified was discrimination which constituted an unfair employment practice within § 31-126 of the General Statutes.[2] The commission heard testimony that an individual's functional vision, his or her actual perception, is affected by intelligence, attention, mood and other subjective factors. There was testimony that the plaintiff's policy was to place all visually disabled applicants in a class and to deny them employment without examination of individual capabilities. The commission also received testimony from other visually handicapped teachers that they have successfully taught multiply handicapped children of all ages. On the basis of this and other evidence, the commission concluded that the Institute had engaged in an unfair employment practice.

The issue before us is whether the trial court erred when, despite acceptance of the facts found by the commission, the court ruled that the Institute's failure to employ the complainant was justi-

---

[2] "[General Statutes] Sec. 31-126. UNFAIR EMPLOYMENT PRACTICES. It shall be an unfair employment practice (a) For an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, because of the race, color, religious creed, age, sex, marital status, national origin, ancestry or physical disability, including, but not limited to, blindness of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against him in compensation or in terms, conditions or privileges of employment . . . ."

fied. The court accepted the commission's conclusion that the complainant had established a prima facie case within § 31-126, which provides, in pertinent part: "It shall be an unfair employment practice (a) For an employer . . . , except in the case of a bona fide occupational qualification or need, because of the . . . physical disability, including, but not limited to, blindness of any individual, to refuse to hire or employ or to bar . . . from employment such individual or to discriminate against him in compensation or in terms, conditions or privileges of employment." The court held, however, contrary to the determination of the commission, that the conduct of the Institute in this case fell within the exception for "a bona fide occupational qualification or need." Specifically, the court ruled that good vision is directly related to, and therefore a valid job qualification for, successful performance in the position of teacher's aide in the plaintiff's lower school classes for multiply disadvantaged children. It therefore concluded that the plaintiff had carried its burden of showing that the complainant's disability prevented her from adequately performing this particular job and was, therefore, within the exception to § 31-126.

It is useful at the outset to note that certain matters which were originally contested are no longer in dispute. The plaintiff now concedes that visual impairment short of total blindness is encompassed by the language of § 31-126 (a) making it an unfair employment practice to refuse to hire "because of . . . physical disability, including, but not limited to, blindness." The defendant has waived, by failing to brief,[3] its former argument in support of

---

[3] *Associated East Mortgage Co.* v. *Highland Park, Inc.*, 172 Conn. 395, 407, 374 A.2d 1070 (1977); Maltbie, Conn. App. Proc. § 172.

that part of the commission's order that required the Institute to produce a full-fledged affirmative action plan.[4]

This appeal is now limited to the legal standard, and the factual underpinning, by which the exception in § 31-126 (a) for a "bona fide occupational qualification or need" is to be tested. The commission argues that the court below erred in its determination of the criteria by which to judge the relationship between physical disability and bona fide occupational need. The commission also asserts that the court erred in substituting its judgment for that of the hearing tribunal as to the weight of evidence on questions of fact.

The scope of a "bona fide occupational qualification" as a defense to a complaint of discrimination depends in part upon the reason advanced for the allegedly discriminatory conduct. Some job disqualifications arise out of employment criteria, such as intelligence tests, which are neutral on their face but have a disproportionate impact on protected classes of workers. Such disqualifications come within the holding of *Griggs* v. *Duke Power Co.*, 401 U.S. 424, 91 S. Ct. 849, 28 L. Ed. 2d 158 (1971); *Evening Sentinel* v. *National Organization for Women,* 168 Conn. 26, 36–37, 357 A.2d 498 (1975); *Bridgeport Guardians, Inc.* v. *Members of Bridgeport Civil Service Commission,* 482 F.2d 1333, 1337 (2d Cir., 1973); these disqualifications are valid if, despite their admittedly adverse impact, they bear a significant relationship to successful job performance. Other job disqualifications are not facially

---

[4] The original notice of public hearing was limited to an individual's complaint of personal discrimination.

neutral but directly disqualify on a basis which is made a suspect classification by the terms of Connecticut's Fair Employment Practices Act, chapter 563 of the General Statutes; such disqualifications are only justified by bona fide occupational need, an exception described in *Evening Sentinel* v. *National Organization for Women,* supra, 38, as "stringent and narrow."

In the case before us, the complainant was refused employment because of her visual handicap, and not on the basis of any facially neutral job qualification. Although the hearing tribunal and the trial court differed in their formulation of a test of job-relatedness, both assumed that some version of the *Griggs* test was appropriate. In this they were in error. The plaintiff's requirement that its lower school teachers' aides have normal vision serves as a direct disqualification of anyone with a visual handicap, in the same way that an advertisement of jobs for men only serves automatically to disqualify women. The plaintiff cannot meet the test of a bona fide occupational qualification by creating an irrebuttable presumption that visually handicapped employees, as a class, are unable adequately to perform duties as teachers' aides. As this court said in *Evening Sentinel,* supra, 35, the purpose of § 31-126 is "to prohibit acts, not status. It is part of a policy to eliminate . . . discrimination in its subtle as well as overt forms. The very act of classifying individuals by means of criteria irrelevant to the ultimate end sought to be accomplished operates in a discriminatory manner. Such discrimination is destructive to society as a whole in that it eliminates a class of individuals who otherwise could have made vital and fresh contributions. [Citation omitted.]"

The standard for a bona fide occupational qualification purposely imposes a heavy burden on an employer whose refusal to hire is prima facie discriminatory within § 31-126. In *Evening Sentinel,* supra, 36, that standard was stated to require a showing that "no member of the class excluded is physically capable of performing the tasks required by the job." *Evening Sentinel* also held (p. 29) that § 31-126 did not permit "classification based upon sex to be treated differently from classifications based upon race, religion, age, national origin or ancestry," the then-existing suspect classifications in the Fair Employment Practices Act.[5] Although *Evening Sentinel* could not, in terms, apply to discrimination against the physically handicapped, who did not come within the ambit of § 31-126 until 1973,[6] there is no basis to depart from its holdings on the facts of this case. It is unfortunate that the first test of the rights of the handicapped involves a confrontation between a plaintiff long committed to training the handicapped and a defendant long committed to eliminating unlawful discrimination. It is, however, eminently clear that the plaintiff's blanket exclusion of anyone without normal visual acuity, without any effort to define the specifications of the position of teacher's aide or to test the capacities of the complainant for that position, cannot

---

[5] *Evening Sentinel* was decided under § 31-126 as it existed before revisions by 1973 Public Acts, No. 73-279, § 14; 1973 Public Acts, No. 73-647; 1975 Public Acts, No. 75-350, § 2; and 1975 Public Acts, No. 75-446, § 2.

[6] The 1973 Public Acts, No. 73-279, § 14, inserted "or physical disability, including, but not limited to, blindness" in subdivisions (a), (b), (c), and (f) of the first sentence of § 31-126 of the General Statutes. Subsequent revisions of § 31-126 are not pertinent to this case.

stand. Blanket exclusions, no matter how well motivated, fly in the face of the command to individuate that is central to fair employment practices.

The trial court therefore erred when it sustained the plaintiff's appeal and denied the complainant's claim of discrimination. This decision leaves unimpaired the findings of the hearing tribunal as to the facts, which, "if supported by substantial and competent evidence, shall be conclusive," under § 31-128 (b). *Evening Sentinel* v. *National Organization for Women,* supra, 28; *Corey* v. *Avco-Lycoming Division,* 163 Conn. 309, 322, 307 A.2d 155, cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1972); *International Brotherhood* v. *Commission on Civil Rights,* 140 Conn. 537, 541–42, 544, 102 A.2d 366 (1953). In some cases, it might not be clear whether particular findings are so enmeshed with the legal standard to be applied that even facially proper findings might require further inquiry. On the facts before us, however, the correct legal standard is concededly an easier standard for the hearing tribunal to have applied than was the one it erroneously adopted. Under these circumstances, it is only necessary for the trial court upon remand to determine the question of back pay and benefits, which it did not previously reach.

There is error, the judgment is set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.