SHELBY TOWNSHIP FIRE DEPARTMENT v SHIELDS

Docket No. 50637. Submitted June 3, 1981, at Detroit.—Decided April 7, 1982.

On February 4, 1968, Raymond E. Shields was hired by the Shelby Township Fire Department as a firefighter. In 1975, Shields became a firefighter-medic, and he continued in this position until his discharge. Shields is a victim of pseudofolliculitis barbae, an illness caused by ingrown beard stubble. Shaving aggravates this condition, and thus the normal treatment involves the cultivation of a beard. Accordingly, in September of 1978, while on vacation, Shields set about the task of growing a short beard. The department's grooming code prohibited all facial hair except moustaches. Upon his return, Shields's supervisor, Sergeant Gomez, informed Shields that he would have to shave off his beard unless he obtained a medical excuse. On October 20, 1978, Shields obtained a letter from Dr. Cynthia Chow which contained a recommendation that he be allowed to grow a beard to relieve his pseudofolliculitis. On October 23, 1978, Shields returned to work and was immediately sent out on an ambulance run. Upon his return, he was told to see Fire Chief Schmidt. Shields gave the doctor's letter to Schmidt, who thereupon assigned him to light duty. In the course of a second confrontation the same day, Schmidt told Shields not to return to work bewhiskered; however, Shields was permitted to work the rest of the day. Schmidt claims (and Shields denies) that he told Shields that a medical leave would not be permitted without some type of medical substantiation. On October 28, 1978 (his next "duty day"), Shields called in and reported that he had an on-duty injury. He continued to call in with the same excuse each duty day until November 6, 1978, when he returned to Dr. Chow and obtained a letter stating that he was under her care and could return to work. Shields

REFERENCES FOR POINTS IN HEADNOTES

[1] Employer's enforcement of dress or grooming policy as unlawful employment practice under § 703(a) of Civil Rights Act of 1964 (42 USCS § 2000e-2(a)). 27 ALR Fed 274.
[2] 15A Am Jur 2d, Civil Service §§ 47, 52.

gave the letter to Gomez, who passed it on to Schmidt. Schmidt then told Gomez to tell Shields that the letter was insufficient and that he would have to obtain a letter from a doctor containing a diagnosis, an estimate on the length of illness, and a prognosis. Dr. Chow, apparently fed up, refused Shields's request for a third letter and told him to get a second opinion. On November 14, 1978, Schmidt again informed Shields that he could not return to work until he had shaved. Schmidt also demanded proper medical documentation of the illness, including a statement that Shields was under a doctor's care and an estimate of the time necessary to cure the illness. After this discussion, Schmidt sent a letter to Shields demanding medical substantiation of the illness. Receipt of this letter prompted Shields to consult Dr. Larry Heath, who diagnosed Shields's condition as pseudofolliculitis barbae. Dr. Heath provided Shields with a letter stating that the disease was incurable but was normally treated by permitting the growth of a beard. Shields gave the letter to his union president, who passed in on to Schmidt. After the November 14 meeting, Shields filed a grievance against the department. A grievance meeting was held on December 11, 1978. At this meeting, Harvey Hanson, the appointing officer for the department, offered to let Shields return to work if he shaved his whiskers. Shields failed to return to work the next day, and the department sent him a specification of charges and notice of discharge. After a hearing, the Shelby Township Police and Firefighters Civil Service Commission issued a determination upholding Shields's discharge. Shields appealed to the Macomb County Circuit Court, Frank E. Jeannette, J., which affirmed the commission's determination. Shields appealed. *Held:*

1. The department's grooming code violated the Handicappers' Civil Rights Act because it does not permit a medical exception.

2. Shields's discharge was improper.

3. A civil service commission, in upholding the discharge of an employee, must make a written statement of the reasons for its decision and indicate the evidence relied upon. Failure to do so amounts to a denial of due process.

Reversed and remanded.

1. CIVIL RIGHTS — HANDICAPPERS — GROOMING CODES.

A fire department's grooming code which does not provide for a medical exception violates the Handicappers' Civil Rights Act (MCL 37.1101 *et seq.;* MSA 3.550[101] *et seq.).*

2. CIVIL SERVICE — DUE PROCESS — WRITTEN FINDINGS.

    A civil service commission, in upholding the discharge of an employee, must make a written statement of the reasons for its decision and indicate the evidence relied upon; failure to do so amounts to a denial of due process.

*Roy W. Rogensues,* for appellee.

*Frank D. Eaman,* for appellant.

Before: BRONSON, P.J., and R. M. MAHER and F. X. O'BRIEN,* JJ.

PER CURIAM. Raymond E. Shields appeals by right the circuit court's affirmance of the Shelby Township Police and Firefighters Civil Service Commission's (commission) decision to discharge him from the Shelby Township Fire Department (department).

On February 4, 1968, Shields was hired by the Shelby Township Fire Department as a firefighter. In 1975, Shields became a firefighter-medic, and he continued in this position until his discharge. Shields is a victim of pseudofolliculitis barbae, an illness caused by ingrown beard stubble. Shaving aggravates this condition, and thus the normal treatment involves the cultivation of a beard. Accordingly, in September of 1978, while on vacation, Shields set about the task of growing a short beard.

The fur began to fly upon Shields's return to work, since the department's grooming code prohibited all facial hair except moustaches. Shields's supervisor, Sergeant Gomez, informed Shields that he would have to shave off his beard unless he obtained a medical excuse. On October 20, 1978, Shields obtained a letter from Dr. Cynthia Chow

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

which contained a recommendation that he be allowed to grow a beard to relieve his pseudofolliculitis.

On October 23, 1978, Shields returned to work and was immediately sent out on an ambulance run. Upon his return, he was told to see Fire Chief Schmidt. Shields gave the doctor's letter to Schmidt, who thereupon assigned him to light duty. In the course of a second confrontation the same day, Schmidt told Shields not to return to work bewhiskered; however, Shields was permitted to work the rest of the day. Schmidt claims (and Shields denies) that he told Shields that a medical leave would not be permitted without some type of medical substantiation.

On October 28, 1978 (his next "duty day"), Shields called in and reported that he had an on-duty injury. He continued to call in with the same excuse each duty day until November 6, 1978, when he returned to Dr. Chow and obtained a letter stating that he was under her care and could return to work. Shields gave the letter to Gomez, who passed it on to Schmidt. Schmidt then told Gomez to tell Shields that the letter was insufficient and that he would have to obtain a letter from a doctor containing a diagnosis, an estimate on the length of illness, and a prognosis. Dr. Chow, apparently fed up, refused Shields's request for a third letter and told him to get a second opinion.

On November 14, 1978, Schmidt again informed Shields that he could not return to work until he had depilated his face. Schmidt also demanded proper medical documentation of the illness, including a statement that Shields was under a doctor's care and an estimate of the time necessary to cure the illness. After this discussion,

Schmidt sent a letter to Shields demanding medical substantiation of the illness. Receipt of this letter prompted Shields to consult Dr. Larry Heath, who diagnosed Shields' condition as pseudofolliculitis barbae. Dr. Heath provided Shields with a letter stating that the disease was incurable but was normally treated by permitting the growth of a beard. Shields gave the letter to his union president, who passed it on to Schmidt.

After the November 14 meeting, Shields filed a grievance against the department. A grievance meeting was held on December 11, 1978. At this meeting, Harvey Hanson, the appointing officer for the department, offered to let Shields return to work if he clipped off his whiskers. Shields failed to return to work the next day, and the department sent him a specification of charges and notice of discharge.

After a hearing, the Shelby Township Police and Firefighters Civil Service Commission issued a determination upholding Shields's discharge. Shields appealed to the Macomb County Circuit Court, which affirmed the commission's determination.

On appeal, Shields raises a number of meritorious issues. First of all, Shields contends that the department's grooming code violates the Michigan Handicappers' Civil Rights Act, MCL 37.1101 *et seq.;* MSA 3.550(101) *et seq.,* since the code does not provide for a medical exception. We agree.

The relevant portion of the act, MCL 37.1103(b); MSA 3.550(103) states in part:

"(b) 'Handicap' means a determinable physical or mental characteristic of an individual or the history of the characteristic which may result from disease, injury, congenital condition of birth, or functional disorder which characteristic:

"(i) for purposes of article 2, is unrelated to the individual's ability to perform the duties of a particular job or position, or is unrelated to the individual's qualifications for employment or promotion."

Pseudofolliculitis barbae is a genetic characteristic that causes infection and permanent scarring; there is no treatment for the condition except allowing a beard to grow. Shields has suffered from pseudofolliculitis barbae for many years and was growing a beard to relieve this condition. In our opinion, Shields has a "handicap" within the meaning of MCL 37.1103(b); MSA 3.550(103)(b). MCL 37.1202(g); MSA 3.550(202)(g) prohibits an employer from discharging a handicapped individual when adaptive devices or aids may enable the individual to perform specific requirements of the job. Therefore, Shields may not be discharged for failure to conform to the grooming code if he can demonstrate that his handicap is unrelated to his ability to perform the duties of his job.

Shields also argues that a grooming code which has no medical exception constitutes an overbroad intrusion into his Fourteenth Amendment "liberty" interests. Our disposition of the issue on statutory grounds renders it unnecessary to address the constitutional argument.

Shields also contends that his discharge was improper under MCL 38.514; MSA 5.3364, which provides that a fireman may not be discharged except for cause. Cause is defined as:

"* * * incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment to the public, neglect of duty, violation of the provisions of this act or the rules of the commission, or any other failure of good behavior, or any other acts of misfeasance, malfeasance or nonfeasance in office."

The specification of charges and notice of discharge stated that Shields's discharge was for refusal to perform his duties, being absent without leave, and violating the grooming code. However, our review of the record convinces us that the actual reason for Shields's discharge was his refusal to shave. From the beginning, Fire Chief Schmidt refused to permit Shields to work until he shaved and refused to accept adequate documentation of Shields's condition (i.e., Dr. Heath's letter). Moreover, Harvey Hanson, the township official who discharged Shields, admitted that the discharge was for failure to conform to the grooming code.

Shields's discharge for failure to conform to the grooming code was improper, since he was not afforded an opportunity to establish that there were aids which would allow him to perform his duties as a firefighter. The department claims that a beard prevents effective utilization of an air mask by allowing smoke to seep into the mask. Shields contends that a satisfactory seal can be obtained through particular adaptive measures. Since the previous hearing did not focus on this precise issue, we remand for a hearing before the commission in order to determine whether there are aids or adaptive devices which will permit Shields to adequately perform his duties as a firefighter. MCL 37.1103(b); MSA 3.550(103)(b).

Shields also contends that the circuit court erred in concluding that the commission's finding that Shields had not presented sufficient medical documentation of his injury was based upon substantial, material, and competent evidence. By failing to raise this issue before the circuit court, Shields has waived it. *Hayes v Booth Newspapers, Inc*, 97 Mich App 758, 773; 295 NW2d 858 (1980). Moreover, Shields admitted in his brief on appeal that his absence was not due to medical problems.

Shields next contends that the commission's failure to make written findings amounts to a denial of due process. We agree. See *Sponick v Detroit Police Dep't,* 49 Mich App 162, 188-189; 211 NW2d 674 (1973).

"* * * [T]he decision maker should state the reasons for his determination and indicate the evidence he relied on * * *." *Goldberg v Kelly,* 397 US 254, 271; 90 S Ct 1011; 25 L Ed 2d 287 (1970). (Citation omitted.)

Accordingly, on remand, we direct the commission to provide Shields with a written statement indicating the reasons for its decision and the facts upon which it based its decision.

We also agree with Shields's contention that the circuit court erred in basing its decision partly upon new evidence which was never presented before the commission. See *Hunn v Madison Heights,* 60 Mich App 326, 333-334; 230 NW2d 414 (1975). However, we disagree with Shields's claim that the commission improperly considered charges not enumerated in the specification of charges, since it is clear that any such new charges were injected into the proceedings by Shields's own counsel.

Although we need not address Shields's contention that discharge was too severe a penalty under the circumstances (since we have determined that his discharge was unwarranted), we wish to urge the commission to consider placing Shields on light duty in the event that the commission finds that Shields's handicap prevents him from performing the normal duties of a firefighter.

Finally, Shields contends that the circuit court erred by failing to award him full back pay. We

agree, since we have concluded that Shields's discharge was improper. MCL 38.514; MSA 5.3364.

Absent compliance with the Michigan handicappers' act, Shields's discharge from the department was unwarranted. Therefore, we order his reinstatement with full back pay.

Reversed and remanded for further proceedings in accordance with this opinion. No costs. We do not retain jurisdiction.