## WARDLOW v GREAT LAKES EXPRESS COMPANY

Docket No. 61211. Submitted December 8, 1982, at Lansing.—Decided
    August 16, 1983. Amended by order of March 27, 1984. Leave
    to appeal applied for.

Clare L. Wardlow, a truck driver employed by Great Lakes
    Express Company, ruptured a disc in his back in 1956. He
    returned to work in 1958 with a lifting restriction of 50 pounds.
    In 1962, he switched from being an over-the-road driver to a
    city driver. In 1978, he was laid off and requested that he be
    allowed to return to over-the-road work. Great Lakes referred
    Wardlow to a doctor who had previously treated him. The
    doctor concluded that Wardlow should not lift things weighing
    more than 40 pounds. Great Lakes refused to reassign Wardlow
    to over-the-road work because of the lifting restriction. Ward-
    low filed for workers' compensation benefits, and the parties
    settled for $45,000. Wardlow also filed suit against Great Lakes
    in Saginaw Circuit Court claiming that defendant's refusal to
    reassign him to over-the-road work violated the Michigan
    Handicappers' Civil Rights Act. A bench trial was held, after
    which the court, Hazen R. Armstrong, J., ordered that plain-
    tiff's complaint be dismissed. Plaintiff appealed. *Held:*

1. The Michigan Handicappers' Civil Rights Act requires that
    an employer accommodate an employee for any handicap un-
    less the employer shows that such accommodation will result in
    undue hardship. The trial court did not consider defendant's
    duty to accommodate plaintiff, and it misconstrued the handi-
    cappers' act in its failure to do so. The case is remanded for a

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 5] 15 Am Jur 2d, Civil Rights § 248.5.
    Construction and effect of state legislation forbidding job discrimi-
        nation on account of physical handicap. 90 ALR3d 393.
[3] 2 Am Jur 2d, Administrative Law § 241.
    Supreme Court's view as to weight and effect to the given, on
        subsequent judicial construction, to prior administrative construc-
        tion of statute. 39 L Ed 2d 942.
[4] 15 Am Jur 2d, Civil Rights §§ 287.5, 412.3.
[5] 15 Am Jur 2d, Civil Rights § 261.
    Recovery of damages as remedy for wrongful discrimination under
        state or local civil rights provisions. 85 ALR3d 351.

new trial, at which defendant has the burden to show that it would have been unduly burdened if it had transferred plaintiff to over-the-road work. If the trial court decides in favor of plaintiff, it must then decide what effect, if any, the workers' compensation settlement had on the lawsuit.

2. The trial court, on remand, must view the evidence and decide whether or not defendant would have been unduly burdened if it had accommodated plaintiff.

3. Defendant's argument that it has not violated the act because it relied in good faith on the doctor's advice is rejected. Whether or not the employer's decision was rendered in good faith is irrelevant.

4. The trial court erred in striking plaintiff's request for exemplary damages. The handicappers' act provides for such damages.

Reversed and remanded.

BRONSON, P.J., concurred but wrote separately to urge the Department of Civil Rights to promulgate comprehensive, clear and reasonable standards setting forth the nature and extent of an employer's duty to accommodate employees' handicaps and the circumstances under which the department would find "undue hardship", such that accommodation would no longer be required. He is also of the opinion that the Legislature should address the problem of the possibility that mandatory accommodation of an injured employee may lead to reinjury, thereby increasing an employer's liability under workers' compensation laws.

1. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT.

The Michigan Handicappers' Civil Rights Act, which forbids discrimination because of a handicap, was enacted to ensure employment to the maximum practicable extent so that handicapped but qualified persons would have the right to employment and is to be interpreted broadly (MCL 37.1101 *et seq.;* MSA 3.550[101] *et seq.*).

2. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — ACCOMMODATION — UNDUE HARDSHIP.

The Michigan Handicappers' Civil Rights Act requires that employers accommodate employees for any handicaps the employees may have unless it can be shown that such accommodation will result in undue hardship (MCL 37.1101 *et seq.;* MSA 3.550[101] *et seq.*).

3. COURTS — ADMINISTRATIVE LAW — STATUTES — JUDICIAL CONSTRUCTION.

Courts are to give great deference to the interpretation of an act by an agency which has been charged with enforcing the act.

4. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — BURDEN OF PROOF.

A person bringing an action against an employer for violation of the Michigan Handicappers' Civil Rights Act has the initial burden of proving that the employer violated the act; once the plaintiff has successfully done so, the burden shifts to the defendant to show that it could not reasonably accommodate the plaintiff without undue hardship (MCL 37.1101 *et seq.;* MSA 3.550[101] *et seq.).*

5. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — EMPLOYMENT DISCRIMINATION — GOOD FAITH.

The Michigan Handicappers' Civil Rights Act forbids an employer from making employment decisions based on what the employer perceives to be an applicant's or employee's handicap, and whether or not the decision was made in good faith is irrelevant; the applicant or employee is just as discriminated against if the decision is made in good faith as he is if the decision is made in bad faith (MCL 37.1101 *et seq.;* MSA 3.550[101] *et seq.).*

6. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — EXEMPLARY DAMAGES.

The Michigan Handicappers' Civil Rights Act provides for exemplary damages (MCL 37.1606; MSA 3.550[606]).

*Hauffe, Lawler, O'Grady & Geyer* (by *John F. O'Grady),* for plaintiff.

*Braun, Kendrick, Finkbeiner, Schafer & Murphy* (by *Morton E. Weldy),* for defendant.

Before: BRONSON, P.J., and T. M. BURNS and ALLEN, JJ.

T. M. BURNS, J. On November 12, 1981, the trial

judge, after a two-day bench trial,[1] ordered that plaintiff's complaint be dismissed. Plaintiff appeals as of right.

Plaintiff worked as a truck driver for defendant from March, 1955, until early 1978. In April, 1956, plaintiff ruptured a disc in his back. He returned to the job in 1958, with a 50-pound weight lifting restriction. He testified that his back caused him no problems working on the job. In 1962, he switched from being an "over-the-road" driver to a city driver. He wrenched his back in 1973 but was off work for only three weeks.

After being laid off in early 1978, he requested to return to "over-the-road" work. Because defendant assigns its drivers based on seniority, he would then have been employed once again because he had more seniority than some of the other over-the-road drivers. Defendant consequently referred plaintiff to a Dr. Underhill, who had previously treated him. Dr. Underhill concluded that plaintiff was not to lift weights over 40 pounds. Although plaintiff presented no medical evidence contradicting this conclusion, he did, however, testify that he could in fact lift weights over 40 pounds without problems and that he had had no problems with his back as a city driver. The parties agree that being a city driver is more strenuous than being an over-the-road driver. On the other hand, Bruce Morrison, defendant's terminal manager, testified that, when plaintiff asked for the transfer, plaintiff also mentioned that he had hurt his back and that it was bothering him. Because of the doctor's restriction, defendant refused to assign plaintiff as an over-the-road driver.

[1] Plaintiff was not required to first exhaust his remedies by first filing a complaint with the Civil Rights Department. MCL 37.1607; MSA 3.550(607); *Constantinoff v Emma L Bixby Hospital,* 111 Mich App 575; 314 NW2d 698 (1981).

Plaintiff eventually filed a claim for workers' compensation. The parties settled for $45,000. Plaintiff also sued defendant, claiming that defendant's refusal to assign him to over-the-road work violated the Michigan Handicappers' Civil Rights Act. MCL 37.1101 *et seq.;* MSA 3.550(101) *et seq.*

Plaintiff argues that the trial judge's decision was clearly erroneous. On the other hand, defendant has presented a very persuasive argument that plaintiff's injury does not even qualify as a "handicap" under the act. MCL 37.1102(2); MSA 3.550(102)(2) states: "A person shall accommodate a handicapper for purposes of employment * * * unless the person demonstrates that the accommodation would impose an undue hardship." A "handicapper" is defined as "an individual who has a handicap". MCL 37.1103(c); MSA 3.550(103)(c). A "handicap" is:

"[A] determinable physical or mental characteristic of an individual or a history of the characteristic which may result from disease, injury, congenital condition of birth, or functional disorder which characteristic:

"(i) For purposes of [MCL 37.1201 *et seq.;* MSA 3.550(201) *et seq.]* is unrelated to the individual's ability to perform the duties of a particular job or position, or is unrelated to the individual's qualifications for employment or promotion." MCL 37.1103(b); MSA 3.550(103)(b).

MCL 37.1202(1); MSA 3.550(202)(1) states in part:

"An employer shall not:

"(a) Fail or refuse to hire, recruit, or promote an individual because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position."

Obviously, plaintiff's back injury is a handicap

but, based on these statutes, a handicap under the act must be "unrelated to [his] qualifications for employment". Defendant described four duties that an over-the-road truck driver must perform which it claims that someone who is not to lift over 40 pounds cannot do. First, hooking the tractor onto the trailer is quite difficult. Second, about five percent of the parcels to be delivered weigh over 40 pounds. Third, driving the long hours aggravates a person's back. Fourth, federal regulations require that tire chains at times be placed on the trucks. These chains weigh between 75 and 80 pounds.[2]

Literally reading the act strongly supports defendant's argument that plaintiff is not "handicapped" under the act. These four duties are to some extent "related" to the job. Therefore, the handicap is to some extent related to the job. Defendant argues that, because plaintiff is not a handicapper under the act, it has no duty to accommodate. In fact, the only duty to accommodate specifically spelled out in the statute is the adaptive devices or aids requirement. MCL 37.1202(1)(g); MSA 3.550(202)(1)(g). Of course, this particular accommodation requirement is irrelevant here.

Furthermore, one can easily argue that, if our Legislature really required the employer to accommodate even though the handicap is minimally related to the employment, it could have written the act differently. In Montana, the statute reads "there is no discrimination where the nature or extent of the handicap reasonably precludes the performance of the particular employment * * *."

_____

[2] Plaintiff presented witnesses disputing each of these items. *E.g.,* a few truck drivers testified that hooking the tractor with the trailer does not require overly substantial exertion. Some also testified that they never put tire chains on the truck.

Mont Rev Codes Ann § 49-4-101. In Wisconsin, the statute reads that the employer may not discriminate against an employee because of his handicap unless the "handicap is reasonably related to the individual's ability to adequately undertake the job-related responsibilities of that individual's employment". Wis Stat § 111.34(2)(a). In addition a number of states use the more restrictive bona fide occupation qualification (BFOQ) exception. Calif Gov Code § 12940 (West); Conn Gen Stat § 46a-60(a); Fla Stat § 23.167(8)(a); Haw Rev Stat § 378-3(2); Nev Rev Stat § 613.350(1); Okla Stat tit 25, § 1302; Pa Cons Stat Ann tit 43, § 955 (Purdon); RI Gen Laws § 28-5-7. In fact, the Elliott-Larsen Civil Rights Act has such a BFOQ provision. MCL 37.2208; MSA 3.548(208).[3]

New York, which once had a statute very similar to Michigan's, interpreted the word "unrelated" in its statute literally. In other words, there is no accommodation requirement. In *State Div of Human Rights v Averill Park Central School Dist,* 46 NY2d 950; 415 NYS2d 405; 388 NE2d 729 (1979), the Court of Appeals upheld the Appellate Division's decision that the defendant had not violated the act when it refused to hire a deaf person as a school bus driver. In interpreting the act, the Appellate Division had said that an employer does not violate the act if the handicap is related to the employment in any way. Obviously, being deaf somewhat affects the job of driving a school bus. The court said that the statute applied to someone who is discriminated against for that particular position because he has lost his sense of

---

[3] An employer cannot argue a BFOQ merely by showing that the job qualifications are only minimally affected. Instead, it is a defense only if the business's essence would otherwise be undermined. *Diaz v Pan American World Airways, Inc,* 442 F2d 385 (CA 5, 1971), *cert den* 404 US 950; 92 S Ct 275; 30 L Ed 2d 267 (1971).

smell or has been physically scarred and not for something that is "related" to the actual job. 59 App Div 2d 449, 452; 399 NYS2d 926, 928 (1977). A similar interpretation of a similar statute was made in *Silverstein v Sisters of Charity of Leavenworth Health Services Corp*, 43 Colo App 446, 455-456; 614 P2d 891, 898 (1980) (Berman, J., *dissenting*).[4]

Despite the language of the act, *Averill Park* was only a 4-2 decision. The dissent argued that the majority's interpretation undermines the Human Rights Division's ability to protect the disabled. 46 NY2d 954; 415 NYS2d 408 (Fuchsberg, J., *dissenting*). *Averill Park* was released on March 20, 1979. Effective July 10, 1979 (less than four months later), the legislature changed the law. 1979 NY Laws, ch 594. It now reads that an employer may not discriminate against a handicapper unless the handicap "prevents the complainant from performing in a reasonable manner the activities involved in the job or occupation sought". See *Westinghouse Electric Corp v State Div of Human Rights*, 49 NY2d 234; 425 NYS2d 74; 401 NE2d 196 (1980).

If we were to accept defendant's arguments, the act would be practically meaningless. MCL 37.1102; MSA 3.550(102) requires accommodation. However, if we ruled that an employer need not accommodate whenever the handicap is related in any way to the job, we would be ruling that the employer need accommodate only if the handicap is not related to the work. Of course, in that situation, no accommodation is needed in the first place. In other words, defendant's interpretation requires accommodation only when no accommodation is needed.

---

[4] The majority did not reach this issue.

One commentator has said: "Reasonable accommodation to compensate for the disabilities of the handicapped is necessary because it represents the only effective means of integrating the handicapped into the work force." O'Dea, *Protecting the Handicapped From Employment Discrimination in Private Sector Employment: A Critical Analysis of Section 503 of the Rehabilitation Act of 1973,* 54 Tulane L Rev 717, 731 (1980). These thoughts are especially relevant since handicapper discrimination has perhaps the highest rate of discrimination in the country. Gardner, *Employment Discrimination—Judicial Identification of the "Handicapped Person" in North Carolina—Burgess v Joseph Schlitz Brewing Co* [298 NC 520; 259 SE2d 249 (1979)], 16 Wake Forest L Rev 836, fn 1 (1980); Lang, *Employment Rights of the Handicapped,* 11 Clearinghouse Rev 703, fn 2 (Dec, 1977).

Iowa's handicapper act is very similar to Michigan's. Iowa Code § 601A.2(11) provides:

" 'Disability' means the physical or mental condition of a person which constitutes a substantial handicap. In reference to employment, under this chapter, 'disability' also means the physical or mental condition of a person which constitutes a substantial handicap, but is unrelated to such person's ability to engage in a particular occupation."

In *Foods, Inc v Iowa Civil Rights Comm,* 318 NW2d 162 (Iowa, 1982), the employer refused to hire a prospective employee with epilepsy. In rejecting an argument very similar to defendant's, the Iowa Surpeme Court ruled:

"A literal interpretation of rule 6.1[5] would allow an

---

[5] The Iowa Civil Rights Commission's rule 6.1 tracked the statute defining "physical and mental disability" as "any * * * physical or

employer to discharge an employee whenever the employee's disability in any way related to his or her ability to perform the job. Harkin's epilepsy obviously bears some relationship to her ability to perform *any* job, since a convulsive seizure such as the one that led to her firing would render her unconscious, and thus unable to discharge her duties, for a brief period of time. We do not believe such a restrictive interpretation of rule 6.1 is justifiable, however.

"Section 601A.18 provides that the Civil Rights Act 'shall be construed broadly to effectuate its purposes.' Logic requires that this principle of construction also be applied to administrative rules promulgated pursuant to the rule-making authority the Act grants to the Commission. * * * The construction of rule 6.1 advocated by Foods would effectively defeat the remedial purpose of Chapter 601A. We therefore conclude that rule 6.1 must be interpreted to mean that a physical or mental disability constitutes 'any * * * physical or mental condition which * * * constitutes a substantial handicap and which is unrelated to the person's ability to perform *[in a reasonably competent and satisfactory manner]* jobs or positions which are available to him or her.'" (Emphasis in original.) 318 NW2d 167.

In *Montgomery Ward & Co, Inc v Bureau of Labor,* 280 Or 163, 570 P2d 76 (1977), the employer refused to hire the employee as a heavy household appliance salesman because he had previously had a heart attack. Or Rev Stat § 659.400(2) defines "physical or mental handicap" as being "unrelated to a person's ability to perform the duties of a particular job". In rejecting the employer's argument that it need not accommodate, the Oregon Supreme Court stated that the act's intent is to achieve the fullest employment compatible with the reasonable demands of the job. 280 Or 168; 570 P2d 78.

---

mental condition which * * * constitutes a substantial handicap and which is unrelated to the person's ability to perform jobs or positions which are available to him or her". 318 NW2d 167.

The Legislature enacted this act forbidding discrimination because of a handicap to ensure employment to the maximum practicable extent so that "handicapped but qualified persons would have the right to employment". *Kimmel v Crowley Maritime Corp,* 23 Wash App 78, 82; 596 P2d 1069, 1071 (1979). As such, the Michigan handicapper's act is to be interpreted broadly. See *Rookledge v Garwood,* 340 Mich 444; 65 NW2d 785 (1954); *Holmes v Haughton Elevator Co,* 75 Mich App 198; 255 NW2d 6 (1977), *aff'd* 404 Mich 36; 272 NW2d 550 (1978). In *Holland v Boeing Co,* 90 Wash 2d 384, 388; 583 P2d 621, 623 (1978), the Washington Supreme Court stated:

"The physically disabled employee is clearly different from the nonhandicapped employee by virtue of the disability. But the difference is a disadvantage only when the work environment *fails* to take into account the unique characteristics of the handicapped person. * * * Identical treatment may be a source of discrimination in the case of the handicapped, whereas *different* treatment may eliminate discrimination againt the handicapped and open the door to employment opportunities." (Emphasis in original; citations omitted.)

Therefore, we are ruling that the act requires that the employer accommodate the employee for any handicap unless the employer shows that such accommodation will result in undue hardship.

In fact, the Michigan Department of Civil Rights has been interpreting the act this way.[6] Courts are to give great deference to the interpretation of an agency which has been charged with enforcing the act. *Boyer-Campbell Co v Fry,* 271 Mich 282, 296; 260 NW 165 (1935); *Detroit Automobile Inter-Ins*

---

[6] *Foods, supra,* relied on the Iowa Civil Rights Commission's rules. *Cf. Unified School Dist No 259 v Kansas Comm on Civil Rights,* 7 Kan App 2d 319; 640 P2d 1291 (1982).

*Exchange v Comm'r of Ins,* 119 Mich App 113; 326 NW2d 444 (1982); *Chrysler Corp v Dep't of Civil Rights,* 117 Mich App 95, 108; 323 NW2d 608 (1982) (MAHER, J., *dissenting).*

In *Michigan Dep't of Civil Rights ex rel Elizabeth Dingler v General Motors Corp* (No. 37293-E1, decided Oct. 23, 1979), the department adopted the referee's recommendation that the respondent had violated the act. The referee had stated:

"The obligation to accommodate a handicapped person is twofold. It concerns both alterations to physical structures and modifications to the job. The first kind of accommodation is necessary to provide access to the place of employment. It may include the installation of a ramp or elevator or the reassignment of parking spaces. The second kind of accommodation is necessary to permit actual performance of the job duties. It may include the reassignment of certain peripheral duties to other employees or the rearrangement of equipment or fixtures in the work area.

"The Handicappers' Act requires respondent to make reasonable efforts to accommodate a handicapped applicant or employee."

In *Michigan Dep't of Civil Rights ex rel Reuben Garcia v Dannon Milk Products* (No. 36557-E7, decided Jan. 22, 1980), the department once again adopted the referee's conclusions: "Accommodation * * * requires an employer to reasonably attempt to successfully remove the barrier which excludes a handicapped person from employment, even if actual success is not achieved".[7]

In fact, these sentiments were expressed in

_____
[7] An administrative agency may interpret an act through adjudication. *Michigan Life Ins Co v Comm'r of Ins,* 120 Mich App 552; 328 NW2d 82 (1982); *Detroit Automobile, supra.* See also *Securities & Exchange Comm v Chenery,* 332 US 194; 67 S Ct 1575; 91 L Ed 1995 (1947).

*Shelby Twp Fire Dep't v Shields,* 115 Mich App 98, 105; 320 NW2d 306 (1982):

"[W]e wish to urge the commission to consider placing Shields on light duty in the event that the commission finds that Shields's handicap prevents him from performing the normal duties of a firefighter."

In suing under the act, the employee has the initial burden of proving that the employer violated the act. In this case, plaintiff met this burden when Morrison testified that plaintiff was not transferred to the over-the-road position because of his physical handicap. At that point, the burden shifted to defendant to show that it could not reasonably accommodate plaintiff without undue hardship. Although the record strongly shows that defendant had made no effort whatsoever to accommodate plaintiff, it is quite sparse on its inability to do it. Assuming that defendant is correct when it asserts that hooking the trailer onto a tractor is very strenuous, no one has shown us just how integral this activity is to the job. If this activity is performed before the driver leaves on his run, one of the mechanics could plausibly do it. Neither side has shown that defendant would be unduly burdened by shifting this responsibility to someone else.

Second, just how much would defendant be unduly burdened by shifting to someone else that particular five percent of the runs with packages over 40 pounds? No one has answered that. Third, at what place are the tire chains put on the tires? If they are done at the point of departure, could not someone else put them on? Defendant argues that federal regulations require that these tire chains be put on. However, defendant has never pointed out to us just which federal regulations

require that. Furthermore, a number of defendant's employees testified that they did not put these tire chains on. The record does not explain just how often these tire chains were used nor just how integral a part of the job it is.

One particular problem lurking in the background here is that plaintiff may injure himself some more thus increasing defendant's workers' compensation liability. However, the Department of Civil Rights has a number of times ruled that a concern over possible future harm to the employee is irrelevant under the act. Instead, the present ability to perform is what counts. *Michigan Dep't of Civil Rights ex rel Marvin Arms v General Motors Corp* (No. 35364-E1, decided Feb. 26, 1980); *Michigan Dep't of Civil Rights ex rel Dick Moore v Lansing School Dist* (No. 36147-E1, decided Oct. 21, 1980). In fact, the latter case here was affirmed in the Ingham County Circuit Court:

"This court is not prepared to say that the possibility of future injury may never be considered, but there must be a substantial probability of immediate injury to the employee. An employer is never justified in refusing employment merely to head off possible worker's compensation liability." *Lansing School Dist v Michigan Dep't of Civil Rights ex rel Dick Moore* (No. 80-26087-AV, decided March 5, 1982).

When the act was on the Senate floor, Sen. Welborn expressed concern that employers would be unreasonably burdened because of increased workers' compensation cost. 41 Journal of the Senate, p 590 (1976). However, the act passed without further amendments. Thus, "the legislature did not intend the greater possibility of future injury or incapacity to be a factor related to an individual's qualifications for employment or abil-

ity to perform such job". *Michigan Dep't of Civil Rights ex rel Carl Bartholomew v General Motors Corp* (No. 35408-E1, decided Oct. 13, 1979), p 4.

We need not at this time go as far as the department has on this issue. Based on the record, defendant's fear that plaintiff will aggravate his back injury even if defendant reasonably accommodates plaintiff is purely speculative.

Because of the lack of a record, we are remanding for a new trial. The trial court misinterpreted the act when it did not consider defendant's duty to accommodate. At the new trial, defendant has the burden to show that it would have been unduly burdened if it had transferred plaintiff to over-the-road work. If the trial court decides for plaintiff, it must then decide what effect if any the workers' compensation award had on this lawsuit.

Defendant next argues that it has in fact shown that it would be unduly burdened. Based on *Trans World Airlines, Inc v Hardison,* 432 US 63; 97 S Ct 2264; 53 L Ed 2d 113 (1977), it argues that an undue hardship is met by merely showing *de minimis* cost. However, *Hardison* was a title VII religious discrimination case and, therefore, implicates the First Amendment.[8] We will not follow it in interpreting our handicapper's act.

Just when an employer has been unduly burdened has not yet been defined. In *Dady v Rochester School Bd,* 90 Mich App 381; 282 NW2d 328 (1979), this Court held that the school did not have the affirmative duty to provide special medical services to the handicapped child. On the other

---

[8] *Hardison* was not even followed in Michigan when this state enunciated the religious accommodation requirement under the old Michigan State Fair Employment Practices Act, MCL 423.303; MSA 17.458(3). *Dep't of Civil Rights ex rel Parks v General Motors Corp,* 412 Mich 610; 317 NW2d 16 (1982). See generally *Snyder v Charlotte Public School Dist,* 123 Mich App 56; 333 NW2d 542 (1983) (T. M. BURNS, J., *dissenting).*

hand, in *Littsey v Bd of Governors of Wayne State Univ,* 108 Mich App 406; 310 NW2d 399 (1981), *lv den* 413 Mich 882 (1982), this Court found that an inflexible policy, which would prevent hearing-impaired students from using adaptive devices to benefit from class lectures, would violate the act. Allowing a handicapped student to use unobtrusive adaptive devices, such as a tape recorder, would not unduly burden the university.

If an employee is blind, the employer obviously would be unduly burdened if it were forced to allow him to drive a truck. Guy, *The Developing Law on Equal Employment Opportunity for the Handicapped: An Overview and Analysis of the Major Issues,* 7 U Balt L Rev 183, 252, fn 244 (1978). See also *McCrea v Cunningham,* 202 Neb 638; 277 NW2d 52 (1979). On the other hand, blindness affects to some extent practically any job.[9] Yet both *Gurmankin v Costanzo,* 556 F2d 184 (CA 3, 1977), and *Connecticut Institute for the Blind v Connecticut Comm on Human Rights and Opportunities,* 176 Conn 88; 405 A2d 618 (1978), held that the employers discriminated against the blind prospective employees by not hiring them as teachers.

For this case, we will let the trial court view the evidence and decide whether or not defendant would have been unduly burdened if it had accommodated defendant.

Defendant next argues that it has not violated the act because it relied in good faith on Dr. Underhill's advice. To a certain extent, the act centers on the employer rather than on the employee's status. It forbids an employer from mak-

---

[9] This point shows that the act must have an accommodation requirement. Otherwise, the blind would be protected in very few jobs.

ing employment decisions based on what he perceives to be a handicap. However, the act also centers on the employee. Whether or not the decision was made in good faith is irrelevant. The employee is just as discriminated against if the decision is made in good faith as he is if the decision is made in bad faith. *Montgomery Ward, supra.* In fact, in *Griggs v Duke Power Co,* 401 US 424, 432; 91 S Ct 849, 854; 28 L Ed 2d 158, 165 (1971), the Supreme Court stated:

"[G]ood intent or absence of discriminatory intent does not redeem employment procedures or testing mechanisms that operate as 'built-in headwinds' for minority groups and are unrelated to measuring job capability.

\* \* \*

"But Congress directed the thrust of the Act to the *consequences* of employment practices, not simply the motivation. More than that, Congress has placed on the employer the burden of showing that any given requirement must have a manifest relationship to the employment in question." (Emphasis in original.)

Plaintiff also appeals from the trial court's decision to strike his claim for exemplary damages. The Elliott-Larsen Civil Rights Act, MCL 37.2801; MSA 3.548(801), provides for exemplary damages. *Ledsinger v Burmeister,* 114 Mich App 12; 318 NW2d 558 (1982); *Moll v Parkside Livonia Credit Union,* 525 F Supp 786 (ED Mich, 1981); *Freeman v Kelvinator, Inc,* 469 F Supp 999 (ED Mich, 1979). Because the handicapper's act, MCL 37.1606; MSA 3.550(606), is virtually identical, we rule that it also provides for exemplary damages.

Defendant, relying on *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401; 295 NW2d 50 (1980), argues that these cases were incorrectly decided. However, *Kewin* was a breach of contract case. The question in *Kewin* revolved around

whether or not the particular contract in that case
allowed for exemplary damages. Interpreting a
statute is a different matter. In this case, allowing
for exemplary damages furthers this statute's in-
tent. Therefore, the trial judge erred in striking
the claim for exemplary damages.

Reversed and remanded with instructions to
proceed consistent with this opinion. We do not
retain jurisdiction.

ALLEN, J., concurred.

BRONSON, P.J. *(concurring)*. I concur in the ma-
jority's disposition of this case, with the under-
standing that the Department of Civil Rights will
exercise its sound discretion by promptly taking
steps to eliminate the uncertainties which pervade
this area of the law. More specifically, I trust that
the department will as soon as practicable promul-
gate comprehensive, clear and reasonable stan-
dards setting forth (1) the nature and extent of an
employer's duty to accommodate employees' handi-
caps, and (2) the circumstances under which the
department would find "undue hardship", such
that accommodation would no longer be required.
Once such standards have been developed and
their validity upheld, compliance and enforcement
will be immeasurably improved.

I also believe that the Legislature should di-
rectly address the problem noted by the majority,
*supra,* concerning the possibility that mandatory
accommodation of an injured employee may lead
to re-injury, thereby increasing an employer's lia-
bility under workers' compensation laws. At the
very least, the Legislature should indicate whether
the department's position as to this issue is consis-
tent with the legislative intention underlying the
act and with the spirit and letter of recent legisla-
tion designed to reform this state's system of
workers' compensation.